UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x
                       :
UNITED STATES OF AMERICA
                       :
        - v. -              10 Cr. 553 (SHS)
                       :
MONDHER BEJAOUI,
                       :
          Defendant.
                       :
- - - - - - - - - - - - - - - x

# MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO DEFENDANT MONDHER BEJAOUI'S PRETRIAL MOTIONS

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

RACHEL P. KOVNER
Assistant United States Attorney
    -Of Counsel-

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the defendant's application for orders: (1) suppressing the defendant's statements to law enforcement officers; (2) compelling the Government to provide a bill of particulars; (3) dismissing the indictment on the ground that it is duplicitous; (4) directing the Government to provide immediate notice of evidence of similar acts it intends to introduce at trial pursuant to Rule 404(b) of the Federal Rules of Evidence; (5) "for disclosure of the Government's list of witnesses and any pretrial statements of those witnesses, as well as a list of marked exhibits"; (6) commanding the Government to disclose any exculpatory material in its possession; (7) ordering the Government to produce the reports of expert witnesses pursuant to Fed. R. Crim. P. 16(a)(1)(E); (8) dismissing the indictment on grounds of pre-indictment delay; (9) requiring the release of grand jury minutes and exhibits presented to the grand jury; and (10) authorizing the filing of further motions.  The Government consents to a hearing to determine whether the defendant's statements to law enforcement officers were taken in violation of his Fifth Amendment rights.  The defendant's other applications should be denied without a hearing.

**BACKGROUND**

A.    <u>The Charges</u>

On June 22, 2010, a grand jury in the Southern District of New York returned an indictment charging the defendant, Mondher Bejaoui, with six counts of mail fraud. (A. 1-6). The indictment charged Bejaoui with operating a fraud scheme that exploited the differential rates that insurance companies in New York State charge for vehicles depending on their location. (A. 1-6). In particular, Bejaoui submitted one application after another to insurance companies falsely claiming that the cars to be insured under the policies were garaged or located at various locations outside of New York City when, in fact, the cars were garaged or located in New York City. (A. 3-4). After the initial applications were approved, Bejaoui then added other vehicles to the policies. (A. 3-4). Once one policy was cut off, Bejaoui simply submitted another application through the state's mandatory scheme requiring insurers to provide coverage to certain applicants. (A. 3-4). As a result of his series of fraudulent applications and the numerous vehicles that Bejaoui fraudulently insured under the policies he obtained, the insurers suffered losses that they calculate to be in excess of $600,000. (A. 15).

B.    <u>Proceedings in District Court</u>

The defendant was first brought into this jurisdiction, pursuant to a writ of habeas corpus ad prosequendum, on June 29, 2010.  A member of the Criminal Justice Act panel was appointed to represent the defendant at his arraignment.

Thereafter, the Court set August 6, 2010, as the Government's deadline for production of initial pretrial discovery and set September 7, 2010 as the defendant's motions deadline.  Those deadlines were each extended by ten days — to August 16, 2010 for discovery and September 17, 2010 for motions — at the request of the Government.

The Government produced discovery materials in three productions on July 7, 2010, August 6, 2010, and August 16, 2010, respectively.

Among the discovery materials was a statement that the defendant gave to law enforcement agents on October 16, 2007. (A. 7-11).  In the interview, among other subjects, Bejaoui discussed the insurance company, Brooklyn Village, that he operated from an office in Brooklyn, New York; the purported limo company that he operated, Bejaoui Express; and his relationship or lack of relationship to certain other purported limo companies.  (A. 7-10).

On September 17, 2010, the defendant requested, and the Court appointed, a new attorney to represent the defendant.  The Court then set a new motions deadline, which was the extended on

two occasions, most recently when the Court endorsed a letter from defense counsel requesting, with consent of the Government, that the defendant's motions deadline be extended until November 26, 2010 and the Government's response deadline also be extended a corresponding three days.  The defendant filed his omnibus pretrial motion on November 26, 2010.

### DISCUSSION

In his omnibus pretrial motion, the defendant seeks: (1) suppression of the defendant's statements to law enforcement officers; (2) a bill of particulars; (3) dismissal of the indictment on the ground that it is duplicitous; (4) an order requiring the Government to provide immediate notice of evidence of similar acts it intends to introduce at trial pursuant to Rule 404(b) of the Federal Rules of Evidence; (5) an order compelling "disclosure of the Government's list of witnesses and any pretrial statements of those witnesses, as well as a list of marked exhibits"; (6) an order commanding the Government to disclose any exculpatory material in its possession; (7) an order compelling the Government to produce the reports of expert witnesses; (8) dismissal of the indictment on grounds of preindictment delay; (9) the release of grand jury minutes and exhibits presented to the grand jury; and (10) an order authorizing the filing of further motions.  Because the defendant's motion to suppress his post-arrest statement raises a genuine issue of material fact, the Government consents to an

evidentiary hearing concerning the defendant's motion to suppress his post-arrest statement.  For the reasons set forth below, the defendant's other applications should be denied without a hearing.

> **A.  The defendant's motion to suppress his statements to law enforcement officers should be denied following a hearing on his factual claims.**

**1. Applicable Law**

Under the Fifth Amendment, law enforcement officers must inform persons who are arrested or in law enforcement custody of the right to remain silent and have an attorney present, among other rights, before they are questioned. Georgison v. Donelli, 588 F.3d 145, 155 (2d Cir. 2009).  The requirement of Miranda warnings applies only to "custodial interrogation."  United States v. Newton, 369 F.3d 659, 669 (2d Cir. 2004) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Whether an individual is "in custody" is determined by ascertaining whether that individual is "subjected to restraints comparable to those associated with a formal arrest."  Berkemer v. McCarty, 468 U.S. 420, 441 (1984).  "[A]n interrogation is not 'custodial' unless the authorities affirmatively convey the message that the defendant is not free to leave." United States v. Mitchell, 966 F.2d 92, 98 (2d Cir. 1992); see also Campaneria v. Reid, 891 F.2d 1014, 1020 n.1 (2d Cir. 1989) (absent arrest, officers must "act or speak in a manner that conveys the message

that they would not permit the accused to leave"); <u>United States</u> v. <u>Guarno</u>, 819 F.2d 28, 31-32 (2d Cir. 1987) (same).

An assessment of whether law enforcement agents conveyed the message that the defendant was not free to leave requires consideration of "all the circumstances surrounding the interrogation." <u>Tankleff</u> v. <u>Senkowski</u>, 135 F.3d 235, 243 (2d Cir. 1998); <u>see also</u>, <u>e.g.</u>, <u>United States</u> v. <u>Cota</u>, 953 F.2d 753, 758 (2d Cir. 1992). Among the relevant factors are:

> [W]hether a suspect is or is not told that she is free to leave; the location and atmosphere of the interrogation; the language and tone used by the police; whether the suspect is searched, frisked or patted down; and the length of the interrogation.

<u>Tankleff</u>, 135 F.3d at 244 (internal citations omitted). The Supreme Court has held that where a defendant has voluntarily accompanied law enforcement agents to a police station and agreed to talk to them about a crime, <u>Miranda</u> warnings are not required. <u>California</u> v. <u>Beheler</u>, 463 U. S. 1121 (1983).

In assessing whether the circumstances of a meeting with law enforcement conveyed the message that the person being interviewed was not free to leave, the ultimate question is "how a reasonable man in the suspect's position would have understood his situation." <u>Id.</u> at 442. The test is thus "an objective one: 'whether a reasonable person in defendant's position would have understood himself to be subjected to the restraints comparable to those associated with a formal arrest." <u>Newton</u>, 369 F.3d at

671 (quoting <u>United States</u> v. <u>Ali</u>, 68 F.3d 1468, 1472 (2d Cir. 1995)).  If a person is subjected to custodial interrogation, any incriminating statements made by the defendant to law enforcement officers are admissible under the Fifth Amendment only if the officers advised the defendant of his <u>Miranda</u> rights and the defendant validly waived those rights.  <u>Miranda</u>, 384 U.S. at 444; <u>Dickerson</u> v. <u>United States</u>, 530 U.S. 428, 433 (2000).

The constitutional requirement of due process further requires that to be admissible in court, a defendant's statements be voluntary, rather than the product of duress or coercion. <u>See</u>, <u>e.g.</u>, <u>Arizona</u> v. <u>Fulminante</u>, 499 U.S. 279 (1991); <u>Schneckloth</u> v. <u>Bustamonte</u>, 412 U.S. 218, 225 (1973).  The Second Circuit has explained that "the test of voluntariness [of a confession] is whether an examination of all the circumstances discloses that the conduct of 'law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined.'" <u>United States</u> v. <u>Guarno</u>, 819 F.2d 28 (2d Cir. 1987) (citations omitted). "Circumstances that support a finding of involuntariness may include 'the youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as deprivation of food or sleep.'" <u>Id.</u> (quoting <u>Schneckloth</u>, 412 U.S. at 226).

**B.    Analysis**

The Government consents to an evidentiary hearing on the defendant's claims that his statements should be suppressed because he was in the custody of law enforcement agents when they interviewed him at the FBI's offices in 2007, but was not read <u>Miranda</u> warnings, and his related claim that his statements to law enforcement agents were coerced. (Def't Mem. 2-5).   The defendant has submitted a declaration that raises a genuine issue of material fact surrounding whether he was in custody when he was questioned by law enforcement officers in 2007.   Among other things, the defendant states that he asked law enforcement agents for permission to leave the FBI's office and was told that he could not leave.  (A. 13).  Because the allegations set forth in the defendant's affidavit would, if true, establish that the defendant's questioning was custody and not preceded by <u>Miranda</u> warnings, the Government consents to an evidentiary hearing on the defendant's <u>Miranda</u> claims and on the related question of voluntariness.  The Government expects the evidence at the hearing to show that the defendant was neither in custody when he was interviewed nor subject to coercion, and thus that his statements are voluntary and admissible.

**B.    The defendant's motion for a bill of particulars should be denied because the defendant has been informed of the specific acts of which he is accused.**

**1.    Applicable Law**

Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars where necessary to "prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987); United States v. Gambino, 809 F. Supp. 1061, 1072 (S.D.N.Y. 1992) (Leisure, J.).  Because a bill of particulars cannot be used as a general investigative tool for the defense or a device to compel discovery, a bill of particulars is required "only when the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990).  In addition, courts "must be cognizant of the fact that a bill of particulars confines the government's evidence at trial to the particulars furnished, [and] [t]hus the court is required to balance restricting the government's proof against protecting defendants from surprise." United States v. Payden, 613 F. Supp. 800, 816 (S.D.N.Y. 1985).

Due to the nature of criminal proceedings, a defendant has a right to be apprised  "'of the essential facts of the crime for which he has been indicted.'" United States v. Sturtz, 648 F.

Supp. 817, 820 (S.D.N.Y. 1986) (emphasis added) (quoting United States v. Salazar, 485 F.2d 1272, 1278 (2d Cir. 1973)); see United States v. Guerrerio, 670 F. Supp. 1215, 1224 (S.D.N.Y. 1987). If so apprised, a defendant is not entitled to obtain -- through a bill of particulars -- a listing of each and every act, statement or event that the Government will prove at trial. See United States v. Henry, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994).

In general, the Government cannot be compelled to provide a bill of particulars disclosing such things as the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crimes charged, or a preview of the Government's evidence or the legal theories it intends to present at trial. See Torres, 901 F.2d at 234 ("acquisition of evidentiary detail" is not the function of a bill of particulars); United States v. Mitlof, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001) (collecting cases); United States v. Mason, No. 06 Cr. 80 (NRB), 2007 WL 541653, at *5 (S.D.N.Y. Feb. 16, 2007) (bill of particulars is not to be used to give defendant a road map to the Government's case).

Thus, it has long been settled that the purpose of the bill of particulars "is to inform the defendant as to the crime for which he must stand trial, not to compel disclosure of how much the government can prove and how much it cannot or to foreclose the government from using proof it may develop as the trial approaches." United States v. Malinsky, 19 F.R.D. 426, 428

(S.D.N.Y. 1956); see United States v. Bellomo, 263 F. Supp. 2d
561, 580 (E.D.N.Y. 2003).

### 2.   Analysis

Because the defendant has been provided with the
requisite notice of the charges against him, his motion for an
order compelling the Government to provide a bill of particulars
containing additional evidentiary detail is an attempt to obtain
a roadmap of the Government's proof to which the defendant is not
entitled.   The indictment advises the defendant "of the essential
facts of the crime for which he has been indicted." Sturtz, 648
F. Supp. at 82.   The five-page charging instrument describes the
method through which the defendant is charged with having
defrauded insurance companies.   (A. 1-5).   In addition, the
indictment identifies the mailings that the defendant used to
accomplish his fraudulent scheme, listing, among other things,
the month and year of each fraudulent mailing; the company listed
as the application on the mailing; the recipient(s) of the
mailings; and the false matters in the mailing.   (A. 4-5).   The
Government has also provided, as discovery materials, the records
of vehicles insured under the fraudulent policies; bank records
for Bejaoui and his companies; Taxi & Limousine Commission
records; records from mailbox drop locations, as well as the
defendant's own statements.

The charging instruments and correspondence with defense
counsel provide adequate disclosure concerning the particular

matter of loss amount on which the defendant seeks additional
evidentiary detail.  The indictment states that the defendant
caused losses to the insurers from whom he sought coverage
because through false and fraudulent statements, the defendant
"sought to obtain, and did obtain, insurance at substantially
lower rates than would have been charged based on the vehicles'
true locations of garaging and operation." (A. 3).  In addition,
the Government has advised defense counsel, in response to
counsel's inquiry, that the insurance companies providing
coverage under the policies fraudulently obtained by the
defendant suffered losses as a result of the defendant's fraud
and of its estimate of the loss caused to the insurance companies
through the fraud — $600,000 to $1,000,000, representing the
companies' calculation of the difference between the rates
charged as a result of the fraudulent applications and the rates
that would have applied in the absence of those
misrepresentations. (A. 15).

        In light of these disclosures, the defendant's request
that the Government also be compelled to further limit its proof
by providing a bill of particulars "to particularize the nature
and the amount of the loss or losses in this case" should be
denied.  (A. 6).  The defendant does not seek "the essential
facts of the crime," Sturtz, 648 F. Supp. at 820, which are
already contained in the indictment, but rather seeks to use Rule
7(f) for "acquisition of evidentiary detail," Torres, 901 F.2d at

234, and "to compel disclosure of how much the government can prove and how much it cannot [and] foreclose the government from using proof it may develop as the trial approaches," Malinsky, 19 F.R.D. at 428.  Because the defendant has more than adequate notice of the essential facts of the charges against him, the Court should deny the defendant's request for a bill of particulars.[1]

> ### C. The defendant's motion for dismissal of the indictment on the ground that it is duplicitous should be denied under the well-settled principles permitting multiple acts of fraud to be joined in a single count.

### 1. Applicable Law

An indictment is duplicitous "if it joins two or more distinct crimes in a single count." United States v. Aracri, 968 F.2d 1512, 1518 (2d Cir. 1992).  As the Second Circuit has explained, however, such pleading "is not presumptively invalid." United States v. Olmeda, 461 F.3d 271, 281 (2d Cir. 2006).  Such charging "may actually inure to a defendant's benefit," because, among other things, it limits the maximum penalty to less than it would be if the defendant "were charged and convicted on separate counts for what amounts to a single scheme." Id.  Thus, an indictment is not "impermissibly duplicitous whenever it contains

---

[1]   The Government is, of course, aware that its discovery obligations are of a continuing nature, and if it obtains additional materials subject to Rule 16 concerning the loss element, it will make prompt disclosure of those materials to the defendant.

several allegations that could have been stated as separate
offenses, but only when the failure to do so risks unfairness to
the defendant." United States v. Margiotta, 646 F.2d 729, 733
(2d Cir. 1981); see also United States v. Sturdivant, 244 F.3d
71, 75 (2d Cir. 2001) (distinguishing "duplicitous" indictments
from indictments that contain "impermissible duplicity").
Fairness considerations include consideration of "whether a
general verdict of guilty conceals a finding of guilty as to one
crime and a finding of not guilty as to another, avoiding the
risk that the jurors may not have been unanimous as to any one of
the crimes charged, assuring the defendant adequate notice,
providing the basis for appropriate sentencing, and protecting
against double jeopardy in a subsequent prosecution." Id.
(citing United States v. Murray, 618 F.2d 892, 897 (2d Cir.
1980)).

        The Second Circuit has repeatedly applied these
principles in fraud cases to conclude that a fraudulent scheme
may be charged in a single count though it contains multiple acts
of fraud that could be charged individually. "[A]cts that could
be charged as separate counts of an indictment may instead be
charged in a single count if those acts could be characterized as
part of a single continuing scheme." United States v. Tutino,
883 F.2d 1125, 1141 (2d Cir. 1989).  The Second Circuit applied
this principle to the statute charged in this case in Margiotta,
where 50 fraudulent mailings formed the basis for a single mail

fraud count.   646 F.2d at 722.   The Second Circuit held that the
charging was permissible, although each fraudulent mailing could
also have formed a separate charge.   The risk of unfairness to
the defendant from the charging was "slight in a case like this
where the essence of the alleged wrong is the single scheme to
defraud and the various mailings, though they are technically the
acts that violate the federal statute, are really the
jurisdictional bases for federal prosecution."   Id. (citation
omitted).

    **2.   Analysis**

       The defendant's challenge to the indictment should be
rejected because the indictment does not contain prejudicial
duplicity.   As the Second Circuit has made clear, in cases not
acknowledged by the defendant's submission, an indictment is not
inherently flawed because a crime that could be charged in
multiple counts is instead charged in one count.   Rather, such
charging is impermissible only when it prejudices the defendant.
Here, the principal effect of the Government's charging multiple
fraudulent statements and mailings associated with each of the
defendant's purported livery companies is to reduce the maximum
penalty that the defendant faces.   While the defendant writes
that the combination of counts provides "clearly inadequate
notice of the charges against" the defendant, this assertion is
belied by the indictment's specification for each charge of the
month and year of the fraudulent mailing; the recipient or

recipients of the mailing; and the false matter in the mailing. (See Def't Mem. at 7). Moreover, the Second Circuit has long made clear that a single scheme containing multiple acts of fraud may permissibly be charged as one count even when it could also be charged in multiple counts where, as here, separate acts "could be characterized as part of a single continuing scheme," Tutino, 883 F.2d at 1141; Margiotta, 646 F.2d at 722 (addressing mail fraud). Accordingly, the defendant's motion should be denied.

> **D.  The defendant's motion for an order requiring the immediate disclosure of Rule 404(b) evidence should be denied.**

The Court should deny the defendant's request for an order requiring immediate disclosure of evidence the Government intends to introduce at trial concerning the defendant's bad acts and requiring the Government's notice to set forth "the manner and method of proof . . . and a precise statement of the basis for admission, including the chain of inferences which the Government alleges leads from the evidence to a material fact in issue." (A. 10).

Rule 404(b) requires that the Government provide "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown" of its intent to use evidence of other crimes, wrongs, or bad acts. Fed. R. Evid. 404(b). The Rule specifies that the Government need only

provide "the general nature of any such evidence."  Id.   Rule
404(b), however, sets no minimum time for action by the
Government, nor would any time limit be appropriate, because the
evidence the Government wishes to offer may change as the proof
and potential defenses crystallize.  See United States v. Allums,
1997 WL 599562, *1 (S.D.N.Y. Sept. 25, 1997) ("The Government has
agreed to produce this material in time so that the defense may
have an opportunity to challenge their admission; this is all
that is required with respect to Rule 404(b) evidence.") (Baer,
J.); United States v. Matos-Peralta, 691 F. Supp. 780, 790
(S.D.N.Y. 1988).

        The Government has not yet determined what 404(b)
evidence it may seek to introduce at trial.  The Government will
disclose the substance of prior bad acts, however, in a timely
fashion in order to permit the defendant an opportunity to
challenge their admission and the Court to make an appropriate
finding.  See Fed. R. Evid. 404(b) ; United States v. Perez, 940
F. Supp. 540, 553 (S.D.N.Y. 1996).  Moreover, the Government's
notice will be sufficient to apprise the defendant of the
"general nature" of the prior bad acts as the rule requires.
Accordingly, the defendant's instant motion for immediate Rule
404(b) notice should be denied.

**E.   The defendant's motion for disclosure of witness's identities, prior statements, and marked exhibits should be denied.**

The defendant's motion for pretrial disclosure of the Government's witnesses, their prior statements, and the exhibits the Government intends to introduce at trial should be denied. (See Def't Mem. at 10-11).  These requests seek an order that is barred by statute, in the case of prior witness statements, and is both premature and inappropriate absent a particularized showing of need, in the case of witness and exhibit lists.

With respect to the defendant's first request, for a list of witnesses, "Fed. R. Crim. P. 16 does not require the Government to furnish the names and addresses of its witnesses." United States v. Bejasa, 904 F.2d 137, 139 (2d Cir. 1990).  Nor does any other rule or statute obligate the Government to disclose the identity of its prospective witnesses.  See United States v. Alessi, 638 F.2d 466, 481 (2d Cir. 1980) ("the prosecution [is] under no obligation to give [the defendant] advance warning of the witnesses who would testify against him." (citing Weatherford v. Bursey, 429 U.S. 545, 559 (1977)).  United States v. Cannone, 528 F.2d 296 (2d Cir. 1975), the case on which the defendant's submission relies, thus makes clear that a defendant is entitled to such a list only if he makes "a specific showing that the disclosure [is] both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case," and found that a district court had abused

its discretion in ordering such advance disclosure when the defense had relied upon "an abstract, conclusory claim that such disclosure was necessary to its proper preparation for trial." Id. at 301-302.

Courts applying this standard have made clear that the kind of generalized assertion present here in seeking the Government's witness list is insufficient:  "The burden is on the defendants to make some particularized showing of need, beyond the obvious assertion that such a list would facilitate preparation for trial." United States v. Pastor, 419 F. Supp. 1318, 1330 (S.D.N.Y. 1975); see also United States v. Bejasa, 904 F.2d 137, 139-40 (2d Cir. 1990); United States v. Ordaz-Gallardo, 520 F. Supp. 2d 516, 521 (S.D.N.Y. 2007) ("The Second Circuit has held, however, that 'in the absence of a specific showing that disclosure [of a witness list] was both material to the preparation of [the] defense and reasonable in light of the circumstances surrounding [the] case,' the request for a witness list should be denied."). Because this "heavy burden," United States v. Alvalle, No. 85 Cr. 419 (JFK), 1985 WL 2348, at *1 (S.D.N.Y. Aug. 22, 1985), rarely can be met, requests for witness lists routinely are denied in this District, see, e.g., United States v. Ahmad, 992 F. Supp. at 685; United States v. Perez, 940 F. Supp. 540, 552 (S.D.N.Y. 1996), and, because there has been no particularized showing of need by the defendant, should be denied in this case.

In addition, the defendant's request for early production of the prior statements of witnesses should be denied, because the Court is without authority to order such disclosure prior to trial.  The law is clear that the Government is under no obligation under the Jencks Act, 18 U.S.C. § 3500 et seq., to produce prior statements of its witnesses until after each has testified on direct examination.  The Jencks Act provides in pertinent part:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. § 3500.

Courts in this Circuit have consistently held that the district court lacks the power to mandate early production of Jencks material. See, e.g., United States ex rel. Lucas v. Regan, 503 F.2d 1, 3 n.1 (2d Cir. 1974); In re United States, 834 F.2d at 287; United States v. Ortiz-Montoya, No. 93 Cr. 0050 (RWS), 1995 WL 37841, at *1 (S.D.N.Y. Jan. 31, 1995); United States v. McGuinness, 764 F. Supp. 888, 896 (S.D.N.Y. 1991).

The sole case cited by the defendant as a basis for ordering early disclosure, United States v. Coppa, 267 F.3d 132 (2d Cir. 2001), does not support the order the defendant seeks. Coppa noted that the Second Circuit had repeatedly held that the

"Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements," id. at 145, and it granted mandamus to vacate a district court's scheduling order requiring earlier disclosure, id. at 146.

In keeping with its customary practice, the Government intends to make 3500 material available to the defense on the Friday prior to the day a witness is called to testify on direct examination.  Under the Jencks Act, Coppa, and other governing case law, the defendant is not entitled to an order requiring that witnesses' prior statements be produced before that date.

Finally, the defendant's request that the Government be ordered to immediately produce a marked list of its exhibits should likewise be denied.  While Rule 16 obligates the Government to provide the defense with documents "the government intends to use ... in its case-in-chief at trial," it does not require that the Government provide a list of the exhibits.  Fed R. Crim. P. 16(a)(1)(E)(ii); see also United States v. Valerio, 737 F. Supp. 844, 847 (S.D.N.Y. 1990) (denying request for list of exhibits as beyond the scope of Rule 16).  As with witness lists, disclosure is warranted only under exceptional circumstances, as "where the complexity of the case is exceptional and the amount of evidentiary materials it produces is extremely voluminous."  United States v. Canter, 338 F. Supp. 2d 480 (S.D.N.Y. 2004) (citing United States v. Falkowitz, 214 F. Supp. 2d 365, 392-393 (S.D.N.Y. 2002)).

In the instant case, the Government has charged a
relatively straightforward insurance rate evasion scheme, whose
operation is detailed in the indictment, complete with reference
to specific documents.  The materials produced in discovery are
straightforward: They consist principally of the insurance
company records associated with the fraudulent policies; state
registration documents for those companies; bank and phone
records for the defendant and the related companies; and
government and insurance records pertaining to the vehicles
insured under those policies.  Neither the charges nor the
discovery materials are therefore not exceptionally complex.
Moreover, the Government is still assessing which documents it
will introduce at trial.  The Government anticipates that it
will provide the defendant with a draft exhibit list during the
week before trial.  The defendant's motion for disclosure of
marked exhibits prior to this time should be denied.

**F.    The Defendant's Request for Disclosure of <u>Brady</u>**
**Material Should Be Denied.**

The defendant also seeks an order directing the
Government to provide <u>Brady</u> material.  Such an order is
unnecessary.  The Government recognizes its obligations under
<u>Brady</u> v. <u>Maryland</u>, 373 U.S. 83 (1963), and acknowledged its
<u>Brady</u> obligations in its initial letter to defense counsel
concerning discovery.  To date, the Government is unaware of any
<u>Brady</u> material regarding the defendant, but will produce any

such material immediately upon learning of its existence.
Because the Government has made a good-faith representation to
the Court and defense counsel that it recognizes and has
complied with its disclosure obligations under Brady, the
defendant's request for Brady material should be denied.  See,
e.g., United States v. Gallo, No. 98 Cr. 338 (JGK), 1999 WL
9848, at *8 (S.D.N.Y. Jan. 11, 1999) (denying defendant's motion
to compel production of Brady material based on Government's
representations that "it is aware of its obligations under Brady
. . . and will produce any Brady material to the defense well
before trial"); United States v. Yu, No. 97 Cr. 102 (SJ), 1998
WL 57079, at *4-5 (E.D.N.Y. Feb. 5, 1998) (denying defense
request that Government provide early disclosure of Brady
material because Government acknowledged its continuing
obligation to provide exculpatory material upon its discovery
and assured that it would comply with that obligation); United
States v. Perez, 940 F. Supp. 540, 553 (S.D.N.Y. 1996) (same).
Accordingly, the Court should deny the defendant's application
for an order requiring the Government to disclose Brady material

> **G.   The defendant's motion for production "forthwith"
> of reports of expert witnesses should be denied
> because no experts have yet been identified.**

The defendant requests that the Government be ordered
to produce "expert reports and resumes forthwith."  (Def't Mem.
at 13). Rule 16(G) provides that, "[a]t the defendant's request,
the government must give to the defendant a written summary of

any testimony that the government intends to use under Rules
702, 703, or 705 of the Federal Rules of Evidence during its
case-in-chief at trial," which should contain "the witness's
opinions, the bases and reasons for those opinions, and the
witness's qualifications."  To date, the Government has not
identified any experts that it expects to call at trial.  Should
the Government identify such experts as it continues its trial
preparations, the Government will provide the requisite notice
to defense counsel.  Because no expert reports have been
generated and no experts have yet been identified, the
defendant's motion seeking immediate disclosure of reports and
expert resumes should be denied as moot.

> **H.  The defendant's motion to dismiss the indictment
> on grounds of preindictment delay should be
> denied because the defendant has not met the
> heavy burden of establishing that the delay
> caused actual prejudice to his defense or that
> the delay was an intentional device to gain
> tactical advantage.**

### 1.  <u>Applicable Law</u>

While the Sixth Amendment's Speedy Trial Clause limits
imposes constitutional constraints on the delay between charge
and criminal trial, the Due Process Clause of the Fifth and
Fourteenth Amendments impose the only constitutional constraint
on pre-indictment delay.  <u>See</u> <u>United States</u> v. <u>Lovasco</u>, 431 U.S.
783, 789 (1977); <u>United States</u> v. <u>Marion</u>, 404 U.S. 307, 324
(1971); <u>see also</u> <u>United States</u> v. <u>Alameh</u>, 341 F.3d 167, 176 (2d
Cir. 2003).  Defendant's invoking the Due Process Clause to

challenge pre-indictment delay face a heavy burden, however, because "the applicable statute of limitations ... is ... the primary guarantee against bringing overly stale criminal charges." Marion, 404 U.S. at 322 (internal quotation marks and citation omitted) (some alterations in original); accord United States v. Birney, 686 F.2d 102, 105 (2d Cir. 1982).  In cases where the indictment was filed before the expiration of the statute of limitations, therefore, courts rarely second-guess the timing of the filing of indictments.  See United States v. Stanzione, 466 F.Supp. 838 (E.D.N.Y. 1979) ("it is, of course, settled that government prosecutors are not obliged to file criminal charges as soon as they have probable cause to believe that an offense has been committed or even when they have amassed evidence sufficient to sustain a conviction. Apart from the constraints imposed by the statute of limitations, the timing of a prosecution much like the decision of whether to prosecute at all generally lies entirely within the prosecutor's discretion."); see also United States v. Martinez-Salazar, 318 F.Supp. 2d 127, 131 (S.D.N.Y. 2004) ("The statute of limitations is the principal protection for defendants against prejudice due to dilatory investigations by police and prosecutors, and the Supreme Court has rejected efforts to use the Constitution's guarantees of speedy trial, to second-guess the timing of investigations and indictments.") (internal citations omitted). Thus, "[i]f the indictment is brought within the applicable

statute of limitations, there is a presumption that the
defendant was not prejudiced." Georgison, 2005 WL 1384015, at *7
(citing cases).

A defendant seeking to sustain a claim notwithstanding
this presumption "must carry a heavy burden." United States v.
Elsbery, 602 F.2d 1054, 1059 (2d Cir. 1979); accord United
States v. Cornielle, 171 F.3d 748, 752 (2d Cir. 1999).  A
defendant must show, first, "actual prejudice to [his] right to
a fair trial [a]nd unjustifiable Government conduct." Elsbery,
602 F.2d at 1059 (citing cases); accord Alameh, 341 F.3d at 176;
Figueroa v. Donnelly, 2003 WL 21146651, at *5 (S.D.N.Y. May 16,
2003); United States v. Long, 697 F.Supp. 651, 657 (S.D.N.Y.
1988).  Second, the defendant must show that the delay caused by
the prosecution must have been "an intentional device to gain a
tactical advantage." Denis v. Upstate Corr. Facility, 361 F.3d
759, 760 (2d Cir. 2004) (citing Marion, 404 U.S. at 324); accord
United States v. Santos, 1999 WL 4912, at *4 (S.D.N.Y. Jan. 5,
1999); United States v. Wallace, 1998 WL 401534, at *12
(S.D.N.Y. July 17, 1998).

    2.  **Analysis**

The defendant's motion for dismissal of the indictment
on grounds of preindictment delay should be denied because the
defendant has not made either of the two showings necessary to
obtain such a dismissal.  First, the defendant has not made the
requisite showing of actual prejudice to his defense from the

delay between the execution of his insurance fraud and the defendant's indictment.  The defendant's motion asserts that his defense was prejudiced in two ways: First, the defendant's "business associate, who was a licensed insurance broker and was responsible for the automobile insurance policies, has fled and cannot be located."  (Def't Mem. at 13).  Second, the defendant's "memory and concentration" have diminished by the passage of time, particularly because the defendant was incarcerated on unrelated state charges during the past two and a half years.  (Def't Mem. at 13-14).

The defendant's claim regarding a missing witness does not satisfy the standard of actual prejudice.  Because "[t]he standard for demonstrating actual prejudice is fairly stringent," Figueroa, 2003 WL 21146651, at *5 (citation and internal quotation marks omitted), Courts have repeatedly held that defendants do not satisfy this standard simply by pointing to the unavailability of a potential witness, without showing that the witness's testimony would be helpful to the defendant. Birney, 686 F.2d at 105-06 ("[T]he proof of prejudice must be definite and not speculative.") (citing cases).  For instance, in Long, where a defendant claimed actual prejudice because a potential witness had been killed, and the defendant "contend[ed] that [the witness's] absence will prejudice him because he will not be available to testify and his statements cannot be cross-examined if introduced by another witness," the

Court concluded the defendant had not met his burden of showing prejudice because the defendant's "perceived prejudice is speculative." 697 F.Supp at 657.   The Court stated that the defendant "does not know whether [the witness's] presence would have helped or hindered his case. There is no way of knowing what his testimony would have been. Therefore, [the defendant's] entire claim of prejudice is based on conjecture." Id.

        Similarly, in United States v. Gotti, the Court rejected several defendants' claims that the death of a potential witness meant that they suffered prejudice from pretrial delay.  2004 WL at *4.  The defendant's had argued that the witness who had passed away "would provide exculpatory testimony," but the Court found that claim inadequate because "Moving Defendants do not provide any details as to how the witnesses would exculpate them and therefore do not offer any particularity as to how they have been prejudiced." Id.; see also United States v. Walker, No. 99 Cr. 379, 1999 WL 777885, at *2 (S.D.N.Y. Sept.29, 1999) (denying motion to dismiss based on pre-indictment delay when defendants did not show how unavailability of witness deprived them of fair trial); United States v. Harrison, 764 F.Supp. 29, 33 (S.D.N.Y. 1991) (petitioner not prejudiced due to "his inability to call a witness who has died" where there was "no showing ... that [the witness] would have or could have testified in a way helpful to defendant") (footnote omitted).  Here, as in the above-

referenced cases, the defendant has not met his burden of
showing specific prejudice from the pre-indictment delay due to
the absence of a witness, because he has not shown how that
witness's testimony "would have or could have testified in a way
helpful to the defendant." Id.

The defendant also argues that he suffered actual
prejudice because his memory and concentration has dimmed in the
period since the charged offenses were committed.  It is well-
established that such a claim is insufficient to show actual
prejudice.  In Marion, the Supreme Court found that the
defendants failed to adequately demonstrate that the
pre-indictment delay by the Government violated the Due Process
Clause where they "rel[ied] solely on the real possibility of
prejudice inherent in any delay: that memories will dim,
witnesses become in accessible, and evidence be lost."  404 U.S.
at 325-326.  The Court noted that "[i]n light of the applicable
statute of limitations, however, these possibilities are not in
themselves enough to demonstrate that appellees cannot receive a
fair trial."  Id.; see also United States v. Vispi, 545 F.2d
328, 332 (2d Cir. 1976) ("To constitute a denial of due process
more by way of prejudice must be shown than the dimming of the
defendant's memory . . ."); United States v. Finkelstein, 526
F.2d 517, 526 (2d Cir. 1975) (stating that "witnesses' hazy
recollection" is "not the kind of 'actual' prejudice required by
Marion").

Finally, the defendant has not met his burden of establishing that the delay between crime and indictment in this case was deliberate and calculated to serve an improper or illegitimate purpose.  See United States v. Cornielle, 171 F.3d 748, 752 (2d Cir. 1999). The defendant suggests no impermissible purpose that motivated the Government's delay, but merely implies that because the defendant was questioned by agents about his fraudulent companies in 2007 and many documents in discovery were recovered by state investigators prior to federal involvement in the case, prosecutors could have charged the case at an earlier date.  Court do not, however, ordinarily second-guess the decisions of investigators and prosecutors concerning when to initiate criminal charges.  "The courts respect the discretion necessarily accorded to the executive to prioritize the use of its resources and to assess what steps are necessary to carry out its responsibilities to be sure a charge is justified, and to develop as much evidence as it needs to win a criminal case." Martinez-Salazar, 318 F.Supp. 2d at 131.  Even if prosecutors had sufficient evidence to charge the case at some point before an indictment was filed, "[t]here is no requirement that the government immediately file charges once sufficient evidence has been obtained." Santos, 1999 WL at *5. Here, because the defendant "put forth no evidence that the Government engaged in any deliberate actions to delay the indictment in this case for its own benefit," United States v.

Silberstein, 2003 WL 21488024, at *4 (S.D.N.Y. June 27, 2003),
his claim must fail.

> **I.   The defendant is not entitled to grand jury minutes or exhibits.**

The defendant's motion ordering the disclosure of
transcripts of grand jury minutes and exhibits should be denied.
Grand jury proceedings carry a presumption of regularity,
Hamling v. United States, 418 U.S. 87, 139-40 (1974), and they
are secret and closed, In re Grand Jury Subpoena, 103 F.3d 234,
239 (2d Cir. 1996); Fed. R. Crim. P. 6(e).  "There is a
tradition in the United States, a tradition that is 'older than
our Nation itself,' that proceedings before a grand jury shall
generally remain secret."  In re Petition of Craig, 131 F.3d 99,
101 (2d Cir. 1997) (quoting Pittsburgh Plate Glass Co. v. United
States, 360 U.S. 395, 399 (1959)).

This principle of grand jury secrecy is codified in
Federal Rule of Criminal Procedure 6(e), which, with certain
exceptions, instructs most participants in the grand jury
process that they "must not disclose a matter occurring before
the grand jury." Fed. R. Crim. P. 6(e)(2)(B).  The Rule
provides, however, that "[t]he court may authorize disclosure —
at a time, in a manner, and subject to any other conditions that
it directs — of a grand-jury matter . . . at the request of a
defendant who shows that a ground may exist to dismiss the
indictment because of a matter that occurred before the grand
jury." Fed. R. Crim. P. 6(e)(3)(E)(ii).  The Second Circuit

requires that a defendant make specific factual allegations of
government misconduct before a district court permits a review
of grand jury proceedings.  United States v. Torres, 901 F.2d
205, 232-33 (2d Cir. 1990); United States v. Leung, 40 F.3d 577,
582 (2d Cir. 1994) ("A review of grand jury minutes should not
be permitted without concrete allegations of Government
misconduct."); see also United States v. Scott, 624 F. Supp. 2d
279, 291 (S.D.N.Y. 2008) (denying motion for inspection of grand
jury minutes where defendant's motion was based on nothing more
than "speculation that some impropriety may have occurred before
the Grand Jury"); United States v. Jailall, No. 00 Cr. 069, 2000
WL 1368055, at *2 (S.D.N.Y. Sept. 20, 2000) (mere "[s]peculation
and surmise as to what occurred before the grand jury are not
sufficient to overcome th[e] presumption" of regularity); United
States v. Corbin, No. 09 Cr. 354, 2009 WL 4505513, at * 4
(N.D.N.Y. Dec. 1, 2009) (denying request for in camera review of
grand jury minutes where defendant "failed to demonstrate
specific occurrences of government misconduct"); United States
v. Yarborough, No. 06 Cr. 190, 2007 WL 962926, at * 13 (W.D.N.Y.
Mar. 28, 2007) (denying pretrial motion to inspect grand jury
minutes where defendant "failed to establish the requisite
'particularized need' to compel disclosure").

     The defendant's motion to inspect the grand jury
minutes and exhibits should be denied pursuant to Torres, Leung,
and Rule 6.  The defendant has put forth no concrete allegations

of Government misconduct, <u>Leung</u>, 40 F.3d at 582; rather, he
offers no more than "speculation and surmise" as to what
occurred before the grand jury in an attempt to overcome the
presumption of regularity of grand jury proceedings, <u>Jailall</u>,,
2000 WL 1368055, at *2.[2]

> **J.   The defendant should be required to show good
>       cause for any further motions.**

     The defense has requested leave to file additional
motions in this case.  Because the deadline for the filing of
motions has passed, after having been extended several times,
the Government respectfully requests that the defense be allowed
to file additional motions only upon a showing of good cause.
Rule 12(c) of the Federal Rules of Criminal Procedure authorizes

---

     [2]   The motion filed on behalf of the defendant, which cites
no Second Circuit authority, fundamentally misstates the content
of the single First Circuit case on which it does rely.  The
submission cites <u>United States</u> v. <u>Claudio</u>, 44 F.3d 10 (1st Cir.
1995) as an example of the proposition that "once a grand jury is
no longer empaneled, the need for secrecy is no longer paramount"
with the added parenthetical description of "abuse of discretion
to refuse to order disclosure of grand jury transcript to
defendant."
     <u>Claudio</u> nowhere addressed the proposition for which the
defense submission claims it stands — that secrecy is no longer
paramount as to a grand jury no longer empaneled.
     Nor does <u>Claudio</u> address the subject of grand jury secrecy
at all in the ordinary case.  <u>Claudio</u> addressed the Government's
decision to rely on an exhibit containing grand jury testimony in
an <u>ex parte</u> submission in opposition to a defendant's motion for
dismissal of the indictment on double jeopardy grounds, while
refusing to disclose the testimony on which it relied to defense
counsel.  The First Circuit held that while in rare circumstances
the Government was permitted to make <u>ex parte</u> sealed submissions,
the rules of grand jury secrecy did not justify the Government's
refusal to disclose its submission to defense counsel while
relying on it before the Court.  44 F.3d at 14.

a district court to "set a deadline for the parties to make pretrial motions."  See United States v. Howard, 998 F.2d 42, 52 (2d Cir. 1993).  In the normal course, a party waives his or her right to file pre-trial motions after the deadline for filing motions has passed.  Id.; see also Fed R. Crim. P. 12(e) ("A party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides.  For good cause, the court may grant relief from the waiver.").

A district court may grant relief from the waiver upon a showing of "(1) cause for the defendant's non-compliance, and (2) actual prejudice arising from the waiver."  Howard, 998 F.2d at 52; see also United States v. Soto-Teran, 44 F. Supp. 2d 185 (E.D.N.Y. 1996).  A strategic decision by counsel not to pursue a claim, inadvertence of one's attorney, and an attorney's failure to timely consult with his client are all insufficient to establish "good cause."  See United States v. Yousef, 327 F.3d 56, 125 (2d Cir. 2003); United States v. Forrester, 60 F.3d 52, 59 (2d Cir. 1995) (holding that counsel's inadvertence does not establish cause); United States v. Wilson, 11 F.3d 346, 353 (2d Cir. 1993) (holding that the failure to make a suppression motion prior to the deadline set by the trial court constituted a complete waiver where there is no "reasonable excuse"); Howard, 998 F.2d at 52 (holding that an attorney's failure to

consult his client in timely manner was insufficient to show cause).

The indictment in this case was returned on June 22, 2010.  The motions deadline of September 17, 2010, was extended when, at the request of the defendant, new counsel was appointed to represent the defendant.  The motions deadline was then adjourned two additional occasions at the request of defense counsel.  The defendant and his attorney have had ample time to consider whether motions should be filed in this case and to draft and file those motions.  Any further defense motions should be permitted only upon a showing of good cause.

### CONCLUSION

For the reasons set forth above, the Government respectfully requests a limited evidentiary hearing on the defendant's Fifth Amendment claim and otherwise respectfully requests that the defendant's motions be denied without a hearing.


Dated:    New York, New York
          December 13, 2010

                         Respectfully submitted,

                         PREET BHARARA
                         United States Attorney for the
                         Southern District of New York


          By:    ___/s/_____
                         RACHEL P. KOVNER
                         Assistant United States Attorney
                         (212) 637-2470

cc:  Jean Barrett, Esq. (via ECF)