

MAR 16 2011

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**
A PROFESSIONAL CORPORATION

2 WALL STREET
3rd Floor
NEW YORK, NEW YORK 10005

TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: JDratel@JoshuaDratel.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/8/11

JOSHUA L. DRATEL

AARON MYSLIWIEC
ALICE L. FONTIER
STUART A. WHITE
LINDSAY A. LEWIS

MEMO ENDORSED

STEVEN WRIGHT
*Office Manager*
RYAN DUFFEY
*Paralegal*

March 16, 2011

**BY FACSIMILE [(212) 805-7924]**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

                    Re:    *United States v. Mondher Bejaoui,*
                                  10 Cr. 553 (SHS)

Dear Judge Stein:

      This letter is in regard to Mondher Bejaoui, whom I represent by CJA appointment in the above-entitled matter, and provides an update with respect to Mr. Bejaoui's medical and mental condition. Ultimately, as a result of the Mr. Bejaoui's medical status, it is respectfully submitted that the April 4, 2011, trial date be adjourned.

      In response to my January 18, 2011, letter (submitted sealed and *ex parte*) setting forth Mr. Bejaoui's condition at that time – based on my observations as well as his extensive medication regimen verified by documents and discussions with medical staff at the Metropolitan Correctional Center ("MCC") – the Court authorized appointment of a psychiatrist or psychologist to examine Mr. Bejaoui, and a psychopharmacologist for purposes of consultation.

      Unfortunately, several factors combined to make both elements – the examination of Mr. Bejaoui, and the consultation with a psychopharmacologist – difficult to achieve in a timely manner. Those factors included:

- Mr. Bejaoui's deteriorating condition at MCC. My associate, Lindsay A. Lewis, Esq., attempted, but was unable, to visit Mr. Bejaoui January 20, 2011, because,

Hon. Sidney J. Stein
United States District Judge
Southern District of New York
March 16, 2011
Page 2 of 4

due to excruciating pain in his feet, he could not walk, and staff refused to provide Mr. Bejaoui a wheelchair. Indeed, MCC personnel reported to Ms. Lewis that Mr. Bejaoui had to be carried by MCC personnel if he was required to leave his cell (a process Mr. Bejaoui confirmed that in subsequent conversations). As a result, I wrote Mr. Bejaoui for the purpose of obtaining a signed HIPAA form (for medical records), which was a primary reason for the attempted visit, and to inform him of the unsuccessful visit. I also asked him to notify me when he would be capable of attending an attorney visit. Thereafter, Ms. Lewis was able to visit Mr. Bejaoui February 2, 2011, but only after considerable delay while staff negotiated a means of transporting Mr. Beajoui to the attorney conference room. Even though Mr. Bejaoui had already been provided a wheelchair, he nonetheless was required to walk down stairs for part of the way to reach the attorney conference room;

- despite Mr. Bejaoui's January 27, 2011, execution of a HIPAA form authorizing release of his medical records (which he had promptly mailed back to me), MCC still has not produced a single document in response to my February 1, 2011, written request – even though MCC claims to adhere to a schedule of production within two weeks of such a request. Nor does MCC respond any longer to telephone calls regarding the request for records;[1]

- Mr. Bejaoui's condition continued to deteriorate at MCC. During a February 2, 2011, visit, Ms. Lewis observed Mr. Bejaoui bleeding from his mouth (a condition that was a likely side effect of certain medication, which he had reported to me earlier, and for which he had been prescribed medication). By at least that date, Mr. Bejaoui was confined to a wheelchair;

- I have encountered significant difficulty in finding a psychopharmacologist with the appropriate skills willing to examine Mr. Bejaoui while he is in custody, much

---

[1] In early February, the head of the legal department at MCC assured my associate, Ms. Lewis, that MCC would provide Mr. Bejaoui's medical records by or before February 14, 2011, the return date for the request. When Mr. Beajoui was moved to MDC shortly before that target date, the senior attorney at MDC informed Ms. Lewis that she would contact MCC to obtain Mr. Bejaoui's medical records. Notwithstanding those representations, the records have not been forthcoming. In addition, the head of the MCC legal department's telephone does not accept voice mail messages, and even messages for the head of the legal department left with MCC staff have not been returned.

Hon. Sidney J. Stein
United States District Judge
Southern District of New York
March 16, 2011
Page 3 of 4

less at a rate tolerable for purposes of CJA appointment.[2] Moreover, the failure of MCC to produce any records of Mr. Bejaoui's medical treatment would make any examination and/or consultation woefully incomplete. Eventually, after discussion with mental health professionals whom I have engaged previously in other cases, I limited my search to physicians with forensic backgrounds even though they do not specialize in psychopharmacology. As a result, an examination of Mr. Bejaoui has finally been scheduled for this Thursday, March 17, 2011. In that context, it is respectfully requested that the Court approve an initial authorization of 20 hours for Richard B. Krueger, M.D., for evaluation of Mr. Bejaoui and consultation with counsel. At Dr. Krueger's hourly rate of $350, initial required funding would be $7,000, plus reimbursement for expenses reasonably incurred;

- sometime in early to mid-February 2011, Mr. Bejaoui was unexpectedly transferred to the Metropolitan Detention Center ("MDC") in Brooklyn. He was initially placed on a suicide watch. He still has not received his property – including his legal papers related to this case – from MCC. His wife had not been permitted to visit him at MDC until this past Monday. He remains heavily medicated (particularly with respect to Oxycodone), although it is unclear (because he does not know) precisely what medication he is prescribed at MDC (and some of it may very well be different – again, without access to Mr. Bejaoui's medical records, such a determination is impossible);

- Mr. Bejaoui continues to suffer from bleeding episodes, which have not been treated at MDC. Nor has he yet been seen by any mental health professionals at MDC, despite the persistent adverse effects of the prescribed medication. Due to the pain in his feet, he has been confined to a wheelchair during his entire stay at MDC. He is essentially unrecognizable physically and cognitively from when I first met him in court December 23, 2010.

In light of these circumstances, it is respectfully requested that the April 4, 2011, trial date be adjourned. Not only has Mr. Bejaoui's condition – both the pain and the means of alleviating it (strong, regular mind-altering medication) – remained an intractable impediment to trial preparation, but he has also been deprived of his property, including legal papers, since his transfer to MDC. In addition, the MCC's and MDC's inexplicable failure to produce Mr. Bejaoui's medical records has impaired the ability to obtain an objective evaluation of his

---

[2] For example, the rates quoted were between $400 and $450 per hour. Previous experience with such professionals involved approved hourly rates of at most $300.

Hon. Sidney J. Stein
United States District Judge
Southern District of New York
March 16, 2011
Page 4 of 4

condition, and devise possible solutions to the dilemma of unbearable pain versus incapacitating pain-relieving medication.

However, now that Dr. Krueger has agreed to perform the evaluation, the process can begin moving forward. Nevertheless, MCC's and MDC's intransigence must also be overcome. In that context, the Court's assistance would be much appreciated. Since Dr. Krueger will be examining Mr. Bejaoui later this week, I will provide a status report by Monday, March 21, 2011, regarding a time frame for Dr. Krueger's evaluation and report (assuming Mr. Bejaoui's medical records are produced sufficiently in advance of a projected date for that report).

Accordingly, it is respectfully requested that the Court (a) grant this application for CJA funding for the services of Dr. Richard Krueger in the amount of $7,000 (reflecting an initial authorization of 20 hours at an hourly rate of $350), plus reimbursement for his expenses reasonably incurred; and (b) adjourn the trial date until a reasonable period after Dr. Krueger submits his report (and, if necessary, the government is afforded an opportunity for an evaluation and report by a physician or psychologist of its choosing).

Respectfully submitted,

Joshua L. Dratel

JLD/lal

cc: Rachel Kovner
    Assistant United States Attorney

SO ORDERED

SIDNEY H. STEIN
U.S.D.J.