```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

         v.                            10 CR 553(SHS)

MONDHER BEJAOUI,

              Defendant.

------------------------------x
                                       New York, N.Y.
                                       May 31, 2012
                                       9:45 a.m.


Before:

              HON. SIDNEY H. STEIN,

                                       District Judge


                     APPEARANCES
PREET BHARARA
     United States Attorney for the
     Southern District of New York
ALEXANDER WILSON
     Assistant United States Attorney

LINDSAY LEWIS, ESQ.
     Attorney for Defendant
```

1                (In open court; case called)
2                THE DEPUTY CLERK:  Counsel, please state your names
3     for the record.
4                MR. WILSON:  Good morning, your Honor.  Alex Wilson
5     for the government.
6                THE COURT:  Good morning.
7                MS. LEWIS:  Good morning, your Honor.  Lindsay Lewis,
8     standing in for Joshua Dratel.
9                THE COURT:  I take it you are waiving your client's
10    appearance?
11               MS. LEWIS:  Yes, your Honor.
12               THE COURT:  Please be seated.
13               I asked you to come in because of my continuing and
14    increasing concern over the pace of this litigation and the
15    relative of certainty of having the man incarcerated for what
16    appears to be the same amount of time or even more than he
17    would be serving if he had pled, especially in light of the
18    report from the Bureau of Prisons psychiatrist.  Although, it
19    may be a psychologist.  I don't have it in front of me.  The
20    man was malingering and the matter should proceed.  Again, my
21    concern is how long this is taking.  My recollection is
22    Mr. Dratel at a conference on April 26th indicated that he
23    wanted another defense report generated, that is, an
24    independent analysis of Mr. Bejaoui's competence and of course
25    I have acceded to that because of my concern.

1    I set a competency hearing for May 31, today,
2    apparently a few days ago the parties called and asked for a
3    rather extended adjournment of that time and I thought it made
4    sense to bring the parties in to restate -- I don't know the
5    number of times I expressed my concern over the pace of this
6    case and the time he spent in prison already. I want both
7    sides to talk to me about what is happening and why it hasn't
8    been resolved. Anybody can go first.

9               MR. WILSON: Certainly, your Honor. As you recall and
10   as you said we were before you last on April 26th and we had
11   set the date of May 26th for the competency hearing, which I
12   think the parties thought to be an aggressive schedule but one
13   we would try to meet. The government has produced 3300 pages
14   of medical reports, which were updates since the last expert
15   reviewed this matter. It is my understanding that is a fair
16   amount of material for the expert to go through. He did have
17   to be retained and brought up to speed and had to meet with the
18   defendant. Just my general understanding from counsel is that
19   while he has made extreme progress and diligent efforts it was
20   not realistic for him to be ultimately be able to come to a
21   conclusion of that defendant and file a report so the
22   government could be on notice before the hearing and have some
23   opportunity to look into his findings and still be able to make
24   the May 31st date.

25              In terms of the extention, I think the parties have

1   discussed with your chambers July 19th, but that is in large
2   part a function of the Court's schedule and if the Court can
3   fit us in earlier, although we have not discussed it
4   specifically, I think the government would like two weeks after
5   a report and I am not sure exactly how defense expert would
6   need because when we talked to your chambers, July 19th was the
7   earliest date we could be accommodated.
8            THE COURT:  Let me tell you what my schedule is.  That
9   is, starting June 4, next Monday, I have what is projected to
10  be a seven-week civil trial.  It ends on July 20th.  It is
11  tried to me as opposed to a jury, which gives me more
12  flexibility but I have essentially dedicated that time to that
13  civil trial.  Nonetheless, again because of my concern of the
14  pace of this case and it is not just the fact that it is going
15  slowly, it is the fact that the man has been incarcerated so
16  long, especially when you have state time without adjudication,
17  he is entitled to adjudication of both his mental state or
18  guilt or innocence if the mental state permits him to be tried.
19           I can fit this in.  It can't be a whole day or if you
20  need more than a whole day, I can fit it in at the end of a
21  number of days of trial.  There also is always a possibility
22  that the civil trial will resolve itself either before Monday
23  or sometime during those seven weeks.  I have no particular
24  knowledge in that regard and in fact I don't have a belief that
25  it is going to settle before Monday.  I don't know what is

1   going to happen during the trial.  So I will double-book as it
2   were in an effort to get your case on.  Again, it very well
3   could be something that I will break that trial at 4:00 p.m.
4   and have three good hours of testimony here.  Something along
5   those lines if that trial doesn't resolve itself during the
6   course of the trial.  I am just telling you whatever I can to
7   get you on.  If you can do it before July 19th, I will do
8   whatever I can to get it on from Judge 19th.
9            Defense.
10           MS. LEWIS:  I think there are a few issues here, your
11  Honor, that have sort of while the doctor --
12           THE COURT:  The doctor what?
13           MS. LEWIS:  The doctor has made a valiant effort to go
14  through those records.  He completed all of them.  He had
15  several weeks ago in fact.  He also listened to the calls from
16  Butner.
17           THE COURT:  I am sorry.  He also has what?
18           MS. LEWIS:  Calls from FMC Butner, which he has also
19  reviewed.  Several of those calls, however, are in Arabic and
20  the government --
21           THE COURT:  You mean the defendant's calls while he
22  was incarcerated at Butner to the outside world, presumably the
23  calls that the Bureau of Prisons psychiatrist used to say that
24  the man was competent, that is that he was malingering because
25  according to the Bureau of Prisons' report call he made to the

1    outside indicated much more competence than he presented to the

2    examining doctors.  Is that what you are referring to?

3            MS. LEWIS:  Yes, your Honor.  And Dr. First has

4    expressed to us that she really wanted the opportunity to

5    review those calls, including the calls that were in Arabic

6    which we're just today going to get translations of from the

7    government and incorporate those calls into his report because

8    he believes it they are important to his assessment of the

9    Butner report because they were so central to that.

10           THE COURT:  Has he reached a conclusion that you know

11   about?

12           MS. LEWIS:  He has met with Mr. Bejaoui twice.  He

13   reviewed the records.  As far as I know he does not feel that

14   he is not competent at this point.

15           THE COURT:  I am not surprised because he is a defense

16   attorney, but I want to know what his thinking was.

17           Go ahead.

18           MS. LEWIS:  I was with him during his first visit

19   there.  There are several reasons he has expressed along the

20   lines both of the conclusions that were reached in the Butner

21   report on how those conclusions were reached and his own

22   assessments after reviewing the records, listening to the calls

23   from Butner and meeting with our client.

24           THE COURT:  When can you have him available for a

25   competency hearing?

1             MS. LEWIS:  We did take that into account in trying to
2    come up with a date.  I know he is going to be out of town the
3    last week in June, which I think is from the 25th to the 29th,
4    and also the first week in July.  I know he would like to meet
5    with Mr. Bejaoui at least one or two more time before preparing
6    a report.  I know it is partially dependent on how long the
7    government wants to review that report.  He has been rather
8    quick though in getting his side of things taken care of.  So
9    if we did need to move it up, I do see it is feasible but I
10   don't know about the two-week window that the government seeks
11   to review the report given an expedited schedule here.
12            THE COURT:  Are you saying that if we give the
13   government two weeks to review the report -- let me ask it
14   directly.  If we give the government two weeks to review the
15   report given your expert's own schedule about when he is
16   available, when can the competency hearing be put on?  If it
17   can't be put on before July 19th, then it can't be put on
18   before July and 19th.  I am just asking you what is available,
19   what is possible, and I think the government is entitled to 10
20   days or two weeks to review the report.
21            MS. LEWIS:  I agree, your Honor.  I think in light of
22   the amount of time that we have between now and when the doctor
23   is out of town, even now we're approaching June tomorrow and I
24   feel that perhaps he would need at least another week in order
25   to meet with Mr. Bejaoui one or two more times and perhaps a

C5v6bejc

1    few days.

2            THE COURT:  Do your calculations.  If you tell me
3    July 19th is essentially the earliest available, we'll keep it
4    there.  Do the calculations in your head and account for his
5    being out of town, account for the two weeks, account for
6    whatever he needs to do to write the report.

7            MS. LEWIS:  I believe as early as perhaps the second
8    week in July based on the schedule we could do it if the Court
9    had time if that gives the government enough time to review the
10   report.  Sooner than that, I don't know.  We currently have a
11   deadline with the government of June 28th for the doctor's
12   report, which was based on a July 19th schedule.  We set that
13   after consulting with the Court about the Court's schedule.  So
14   I would say we can move it up perhaps a week, but I think more
15   than that would press the government.

16           THE COURT:  Let's move it up a week to July 12.  I
17   will be in touch.  My deputy will be in touch in terms of
18   scheduling.  If that trial is gone by then, we'll have full
19   days.  If the trial is not gone, I may have to do it in a
20   couple of hour segments each time.  Are there people coming in
21   from out of town?

22           MR. WILSON:  Your Honor, the government's two experts
23   will be coming down from Devens and up from Butner.  We can
24   make it work if it works for your Honor.  I suppose depending
25   on the amount of time you have available, maybe we can decide

1   it when we get closer.  It sounds like we can do it the 19th
2   and 20th if it is going to end at the same time anyway, but
3   that seems premature until your Honor sees where your trial is.
4           THE COURT:  Let's keep it now for Judge 12, but stay
5   in touch with my chambers.  We have to put that tentative
6   giving all the moving parts here.  How many hours do the
7   parties think it is going to take?  I understand it is just an
8   estimate.
9           MR. WILSON:  One moment, your Honor.
10          THE COURT:  Yes, of course.
11          MR. WILSON:  Your Honor, I think is it probably three
12  or four hours per witness and there will three or four
13  witnesses which gives you one long day.  That may be more than
14  is necessary, but I want to error on the side of a generous
15  estimate rather than surprise your Honor with a longer
16  proceeding.
17          THE COURT:  We'll keep it on the 12th but everybody
18  should check in with my deputy by the end of June to see where
19  we stand.
20          Are the parties talking at all about resolving this?
21  Let me ask again.  I don't have the good estimate.  How long
22  has this man been incarcerated between incarceration in state
23  court where trial was dismissed for violations of speedy trial,
24  plus his proceedings here while all these proceedings have been
25  pending?

1   MR. WILSON: Your Honor, I am not sure on the state
2   time, which is as your Honor knows is a totally unrelated case
3   and is not in any way connected to these charges. I don't know
4   the details. It is a harassment claim.
5   THE COURT: But I do believe it is related to charges.
6   It was harassment when he was alleged to have been harassing an
7   employee I think, but it may have had to do with harassment
8   based on this alleged insurance fraud.
9   MR. WILSON: That is not my understanding.
10   THE COURT: And the defendant's lawyer is saying no as
11   well.
12   MS. LEWIS: There is no indication of that, your
13   Honor.
14   THE COURT: I retract that.
15   MR. WILSON: On this case, your Honor, he has been in
16   since August of 1210. So we're approaching two years, which is
17   well within the guidelines range. The parties have been
18   discussing things, your Honor. Given the changed
19   circumstances, the government will be making a new plea offer
20   which I think would put the guidelines range around time that
21   he has already spent in. My understanding from defense counsel
22   is that he continues to not be competent to accept a plea and
23   therefore there is no room to move in that direction. But once
24   we have a new plea agreement, I think Mr. Dratel has said he
25   will present it and see if his client is competent to hear it.

1           THE COURT:  Yes.

2           MS. LEWIS:  I would say two things on that.  One,
3  we're always open to a resolution here.  I know we have put
4  forth the idea of a deferred prosecution of this case.
5  However, as to a plea I don't think that is productive at this
6  time because there is still clear discrepancy as to his level
7  of competency and in good faith I don't see that happening
8  until we can resolve these competency issues.

9           THE COURT:  There is no harm in the government making
10 the new plea offer, right?  No harm by that.

11          MS. LEWIS:  No, your Honor.

12          THE COURT:  That gives you a new baseline for
13 discussions.  Again, I am not getting into the middle of plea
14 discussions; but if the government does that, there is a new
15 parameters I presume for the parties to discuss.  Mr. Dratel
16 may after talking with his client change his view.  Certainly
17 there is room for disagreement as to whether he is competent or
18 not, hence the competency hearing.  I understand that.  There
19 is at least one apparently expert who believes the man is
20 competent.  So there is room for disagreement there.

21          Presumably there is about to be a disagreement because
22 you indicated that the defense expert thinks he is not
23 competent.  Obviously Mr. Dratel is not going to negotiate with
24 an incompetent person, but these things are not always hard and
25 fast and given the new plea agreement Mr. Dratel may and new

1   discussions with his client he may come to the conclusion that
2   the client is competent.  That is not for me.  Ultimately it is
3   going to be for me if we have a competency hearing, but those
4   types of discussions are not for me.
5              So don't reject anything out of hand.  See what the
6   government's offer is.  Continue to talk with your expert.
7   Just because he is hired by the defense doesn't mean that he is
8   true to his profession, that is he going to conclude that the
9   man is incompetent.  Continue your discussions.  Continue the
10  discussions.
11             We're on for a competency hearing on July 12th at
12  9:30 a.m.  You understand my situation in terms of the other
13  trial.  You also understand my great desire to move this case
14  forward.
15             Anything else I can do for the parties?
16             MR. WILSON:  Your Honor, I think time is automatically
17  included.
18             THE COURT:  It is because there is a pending
19  competency issue.
20             MR. WILSON:  No other issues then, your Honor.  Thank
21  you.
22             THE COURT:  Defense?
23             MS. LEWIS:  No, your Honor.
24             THE COURT:  Thank you both.
25             MS. LEWIS:  Thank you.
                              o0o