UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x
                                     :
UNITED STATES OF AMERICA
                                     :    10 Cr. 553 (SHS)
        -v.-
                                     :
MONDHER BEJAOUI,
                                     :
                Defendant.
                                     :
- - - - - - - - - - - - - - - - - - x

# GOVERNMENT'S REQUEST TO MODIFY VARIANCE REQUEST TO CHARGE

PREET BHARARA
United States Attorney for the
Southern District of New York

Rachel P. Kovner
Kan M. Nawaday
Assistant United States Attorneys
Of Counsel



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 7, 2013

<u>By Hand and ECF</u>

The Honorable Sidney H. Stein
United States District Court
  For the Southern District of New York
500 Pearl Street
New York, New York 10007

>  Re:  *United States v. Bejaoui*, 10 Cr. 553
>       Government's Proposed Modified Request to
>       Charge

Dear Judge Stein:

The Government respectfully submits this letter request to modify the Court's instruction on variance to make clear that the Government's proof on the mailing element for each of the mail fraud counts is not limited to the mailings set forth in the indictment. In that regard, the Government respectfully requests that the Court include the attached jury charge relating to "Variance in Dates, Amounts, and Facts Alleged" (the "Variance Charge," attached as <u>Exhibit A</u>) in its instructions to the jury.

### Relevant Background

As alleged in the indictment, and as the Government expects that the evidence at trial will demonstrate, Mondher Bejauoi defrauded insurance companies of hundreds of thousands of dollars by opening insurance policies under the company names "Bejaoui Express, Inc.," "Hamton Luxury Cars," "Hampton Luxury Cars," "Vestal Limousine Corp.," and "Pedro Limousine Corp." (collectively, the "Bejaoui Companies"). Bejaoui sold livery car drivers based within the five boroughs of New York City insurance coverage by adding them to these policies. But Bejaoui lied to the insurers about where his customers' cars were located, claiming that the vehicles were garaged and

operated in towns in upstate New York and Long Island with substantially lower insurance risks and - consequently - substantially cheaper insurance. These misrepresentations enabled Bejaoui to obtain insurance for approximately one third of the cost that he would have had to pay if he had honestly represented the location at which the cars were garaged and operated.

The indictment sets forth an overview of Bejaoui's fraud, describing the means by which Bejaoui carried out his scheme. (Indictment ¶ 3). It alleges, among other things, that: (i) Bejaoui "caused to be mailed to the [New York Automobile Insurance Plan] and to private insurers, insurance applications for livery vehicles in which the true locations at which the vehicles were garaged and operated was misrepresented;" and (ii) once the policies were issued Bejaoui added additional livery vehicles operating in New York City to the policies. (Indictment ¶ 3).

The indictment charges Bejaoui in six counts. Each count relates to a specific Bejaoui Company and insurance policy which was obtained in the scheme. The "to wit" clause of each count also alleges facts such as (i) the approximate date of the mailing of the application relating to that particular insurance policy; (ii) the recipient of the application; and (iii) certain false matters contained in the application.

Besides the mailings alleged in the indictment, the Government has provided to the defendant in its Rule 16 discovery and its exhibits for trial, proof of additional mailings relating to the charged conduct. For example, the discovery and Government exhibits included policy change request forms ("Policy Change Request Forms"), which were submitted in furtherance of the scheme to add and replace vehicles to the relevant policies. Certain of the Policy Change Request Forms, which contained false statements concerning the garaging and operating location of the vehicles, also contained proof of mailing. The bulk of these materials were provided in discovery to the defense over two and a half years ago and were among the Government's exhibits provided in January 2013.

In addition, in early January 2013, the Government provided the defendant with statements of its witnesses describing the mailings it intends to rely on at trial. Notes memorializing the statements of a witness from the New York Automobile Insurance Plan ("NYAIP") memorialize among other things, how each application for insurance for the Bejaoui

2

Companies was delivered to the NYAIP, with some applications having been hand-delivered and others having been sent by mail. These deliveries are also summarized in a chart provided to defense counsel in January. The notes disclosed in January also memorialize that the applications are then transmitted to insurance companies, with all insurers except for American Transit Company - one of the companies at issue in this case - being forwarded their applications by mail. Thereafter, the insurance company must mail policy documents to both the insured and to the producer. In addition, they make plain that any changes to a policy must also be mailed to the insured. Notes of a number of insurance company witnesses also discuss the numerous mailings of policy documents sent by the insurance companies regarding the Bejaoui Policies.

Because one of the fraudulent insurance applications in this case was submitted to the NYAIP by hand and then picked up from the NYAIP by the assigned insurance company, the Government would not be able to prove that the application documents for that policy were themselves mailed to the insurance company or the NYAIP. Rather, the Government expects to rely on the numerous additional mailings that were made in connection with that fraud, such as the required mailing of policy documents to the insured and to the insurance broker.

## Discussion

The Government respectfully requests that the Court consider the attached proposed modified variance charge, because it accurately reflects the law in this Circuit establishing that the Government is permitted to rely on mailings other than those charged in its indictment in order to meet its burden of proof at trial.

The Second Circuit has "consistently permitted significant flexibility in proof, provided that the defendant is given notice of the core criminality to be proven at trial." *United States v. Rigas*, 490 F.3d 208, 228 (2d Cir. 2007). "The 'core of criminality' of an offense involves the essence of the crime, in general terms; the particulars of how a defendant effected the crime falls outside that purview." *United States v. D'Amelio*, 683 F.3d 412, 418 (2d Cir. 2012). Second Circuit case law makes plain that particular mailings or wires as part of a fraudulent scheme are *not* the core of criminality of the offense. Rather, the Court has repeatedly held in interpreting the wire fraud statute (which parallels the mail fraud statute), that the Government may rely on fraudulent transmissions different than those alleged in the

indictment to meet its burden of proof, so long as (1) the transmissions are in furtherance of the same scheme to defraud, and (2) the defendant was given notice of the mailings on which the Government relied. *Id.*; *United States v. Dupre*, 462 F.3d 131 (2d Cir. 2006).

These precedents establish that the Government is permitted to rely on mailings other than those charged in the indictment in this case. First, the Government has provided Bejaoui with ample notice of the "core criminality" to be proven at trial, which in this case is the use of the mails in furtherance of a scheme to defraud insurance companies through lies about the locations where vehicles were garaged and operated. All of the mailings on which the Government will rely are fraudulent mailings in furtherance of that scheme.

Second, the Government's reliance on mailings outside the indictment and on mailings other than the mailing described in "to wit" clause for Count Two, does not modify an "essential element" of the alleged crime resulting in a "constructive amendment" of the indictment. *United States v. D'Amelio*, 683 F.3d 412 (2d Cir. 2012) is instructive on this point. In that case, D'Amelio was convicted after trial of child enticement. The indictment's "to wit" clause alleged that the interstate facility used by D'Amelio was the Internet. However, the interstate facility used by D'Amelio which was proven by the Government at trial was the telephone and not the Internet. As a result, the Government requested, and the district court gave, a jury instruction that proof of the use of a telephone was sufficient to prove the interstate facility element. *D'Amelio*, 683 F.3d at 413-14. Later, the district court changed course and determined that the jury instruction resulted in a "constructive amendment" and granted D'Amelio a new trial. *Id.* at 415-17. On the Government's appeal, the Second Circuit reversed and held that no constructive amendment had occurred and that the "essential element of the crime was the use of the facility or the means of interstate commerce, *not the particular means used.*" *Id.* at 423 (emphasis added). The Circuit also held that the absence of a constructive amendment was further supported by the fact that the allegations in the indictment, proof at trial, and the jury instructions "substantially correspond[ed] with each other, as they involve[d] a single course of conduct." *Id.* at 424.

The same analysis applies here. The "essential element" of mail fraud is the use of the mails in furtherance of the scheme, not the particular mailing. *See id.* at 423. Further, the offense charged here, like in *D'Amelio*,

4

constitutes a "single course of conduct," where the allegations in the indictment and proof "substantially correspond" with each other and involved a single course of conduct. *Id.* at 424. The Government expects that the evidence will show that Bejaoui participated in a singular scheme in which he used each of the Bejaoui Companies to perpetrate the same fraud against different insurance companies.

Third, for the same reasons described above, the expected variance between the mailing described in Count Two and the mailings the Government expects to use to prove the mailing element of Count Two is non-prejudicial. *See United States v. Mucciante*, 21 F.3d 1228, 1236 (2d Cir. 1994) ("A variance is immaterial — and hence not prejudicial — where the allegation and proof substantially correspond, where the variance is not of a character that could have misled the defendant at the trial, and where the variance is not such as to deprive the accused of his right to be protected against another prosecution for the same offense.") (citation and internal quotation marks omitted). For one, there is no prejudice because Bejaoui has had more than sufficient notice that the Government's proof would not be limited merely to the mailings described in the "to wit" clauses of the indictment. The Government included in its Rule 16 discovery, the bulk of which was provided close to two and a half years ago, and its exhibits, which were provided in January 2013, materials evidencing mailings other than the mailings in the indictment. As noted, the discovery and exhibits included numerous Policy Change Request Forms relating to each of the charged counts. These Policy Change Request Forms falsely stated the garaging and operating locations of vehicles to be added to the policies and included proof of mailing. Moreover, the Government's 3500 disclosures, which were also provided in January 2013, described the expected testimony of relating to the mailing of Policy Change Request Forms and policy documents.

In addition, *Dupre* establishes, in particular, that where the additional or different proof on which the Government relies is contained in exhibits or 3500 disclosures, the defendant is not prejudiced by the Government's reliance on those materials. 462 F.3d at 141 ("Because prosecutors generally disclose exhibits and witnesses' prior statements in advance of trial, the testimony of Jane Clark and the documents related to it could not have surprised the defense") (citing Fed. R. Crim. P. 16; 18 U.S.C. § 3500). Here, as in *Dupre*, the Government's exhibits and 3500 disclosure set forth the additional mailings on which the

5

Government will rely at trial. Indeed, unlike in the ordinary case, these disclosures were provided approximately three months in advance of the trial scheduled to begin on April 8. Accordingly, because the Second Circuit's case law establishes that the Government may rely on the additional mailings at trial, the Government requests that the Court give the variance instruction enclosed.

## Conclusion

For the foregoing reasons the Government respectfully requests that the Court include the jury charge set forth in Exhibit A, attached hereto, in its instructions to the jury.

Dated:  New York, New York
        April 7, 2013

                        Respectfully submitted,

                        PREET BHARARA
                        United States Attorney for the
                        Southern District of New York

                    By: /s/ Rachel P. Kovner & Kan M. Nawaday
                        Rachel P. Kovner
                        Kan M. Nawaday
                        Assistant United States Attorneys
                        (212) 637-2470/2311

Cc: Joshua Dratel, Esq. (By ECF)
    (Counsel for Mondher Bejaoui)

## EXHIBIT A

### REQUEST NUMBER 23

#### Variance in Dates, Amounts, and Facts Alleged

You will note that the Indictment alleges that certain acts occurred on or about various dates. It does not matter if the evidence you heard at trial indicates that a particular act occurred on a different date. The law requires only a substantial similarity between the dates alleged in the Indictment and the dates established by the evidence.

Similarly, if the Indictment charges that certain monetary amounts were involved, and the testimony or exhibits indicate that in fact different amounts were involved, it is sufficient if you find that the amounts involved are substantially similar to the amounts alleged in the Indictment.

Similarly, if the Indictment charges that certain mailings were involved, and the testimony or exhibits indicate that in fact different mailings were involved, it is sufficient if you find that the mailings involved were made in furtherance of the scheme alleged in the Indictment.

> Adapted from the charge of the Hon. Richard J. Sullivan in United States v. Peirce, 06 Cr. 1032 (S.D.N.Y. 2008), and Sand, Modern Federal Jury Instructions, Instrs. 3-12 and 3-13.