UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
                                        :
UNITED STATES OF AMERICA,               :
                                        :      10 Cr. 553 (SHS)
        -  v.  -                        :
                                        :
MONDHER BEJAOUI,                        :
                                        :
                Defendant.              :
                                        :
---------------------------------------X


**GOVERNMENT'S SENTENCING MEMORANDUM**


                        PREET BHARARA
                        United States Attorney
                        Southern District of New York
                        One St. Andrew's Plaza
                        New York, New York 10007




    Kan M. Nawaday
    Assistant United States Attorney
    - Of Counsel-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------X
                                     :
UNITED STATES OF AMERICA,            :
                                     :    10 Cr. 553 (SHS)
        – v. –                       :
                                     :
MONDHER BEJAOUI,                     :
                                     :
                Defendant.           :
                                     :
-------------------------------------X

        The Government respectfully submits this sentencing memorandum in connection with the September 17, 2013 sentencing of defendant Mondher Bejaoui (the "defendant" or "Bejaoui"), and in response to the August 23, 2013 sentencing memorandum submitted by the defendant (the "Def. Mem.").

        As set forth below, the Government submits that a sentence within the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of 57 to 71 months' imprisonment, is reasonable and appropriate given, among other things, the nature and seriousness of the offense.  This Guidelines range differs from the Guidelines range in the Presentence Investigation Report ("PSR"), in that it includes a two-level enhancement for obstruction of justice.  The Government respectfully submits that this enhancement should be included in the Guidelines calculation in light of Bejaoui's deliberate feigning of incompetency in order to delay his trial.

## BACKGROUND

### A.   Offense Conduct and Mid-Trial Plea

As set forth in the PSR, and as presented through the witnesses who testified at trial before the defendant's mid-trial plea, Bejaoui operated a long-running insurance fraud scheme from his office at 99 Smith Street, in Brooklyn, New York.  Through numerous shell companies which he created, Bejaoui fraudulently obtained insurance for over 100 livery cars.  Bejaoui was able to obtain a cheaper insurance rate by falsely claiming on insurance applications that the livery cars were operating in upstate New York and Long Island, while in reality, they were operating in the New York City area.

To hide his fraud, Bejaoui opened mail boxes in places in upstate New York such as Endwell and Vestal, New York, and had insurance, Taxi & Limousine Commission, and Department of Motor Vehicles documents mailed to those mail boxes, then forwarded to his office in Brooklyn.  In doing so, Bejaoui gave the appearance to the insurance company victims that his companies and vehicles were actually operating in low insurance rate areas.

Moreover, Bejaoui hid his own involvement in the fraud by using the identities of certain clients of his tax preparation business on the incorporation and other documents

2

that were part of his fraud.  For example, Bejaoui, without any authority to do so, used the identity documents of Sadok Mejri to create false incorporation documents for one of the shell companies he used in his scheme. (*United States* v. *Bejaoui*, Trial Tr. at 334-335).

On April 8, 2013, trial began in Bejaoui's case. After the second day of testimony, on April 11, 2013, Bejaoui pleaded guilty to Counts 1, 2, 3, 5 and 6 of the indictment. (PSR ¶ 3).

**B.    Presentence Investigation Report and Guidelines Calculation**

The United States Probation Office prepared a PSR, dated August 23, 2013, calculating an adjusted offense level of 23, criminal history category of I, and a Guidelines range of 46 to 57 months' imprisonment.  The Government agrees with the PSR's calculation except that, as discussed below, the Government submits that a two-level enhancement for obstruction of justice should be added to the offense level.  Accordingly, at offense level 25 and criminal history category I, the Government's proposed Guidelines range is 57 to 71 months' imprisonment.

## DISCUSSION

### A.  The Court Should Apply A Two-Level Enhancement for Obstruction of Justice In Calculating The Appropriate Guidelines Range

The Court should apply a two-level enhancement for obstruction of justice on the basis of Bejaoui's malingering in order to delay his trial.

The Government respectfully submits that the findings of the Government's expert witness at the competency hearing in this case, the Court's decision on competency, and the defendant's conduct subsequent to that decision, all show that Bejaoui has deliberately feigned incompetency to manipulate the judicial process and delay his trial.

Section 3C1.1 provides for a two-level enhancement in cases where it is shown by a preponderance of the evidence that the defendant "willfully obstructed or impeded, or attempted to obstruct or impede . . . the prosecution of the instant offense."  U.S.S.G. § 3C1.1.  Courts have held that an obstruction of justice enhancement is appropriate where a defendant deliberately feigns incompetency to delay trial.  *See, e.g., United States* v. *Patti*, 337 F.3d 1317, 1325 (11th Cir. 2003)("feigning incompetency, whether to create doubt as to his competency so as to prod his attorney into requesting competency hearings or to convince the court that he cannot stand trial,

4

will trigger a § 3C1.1 enhancement."). *See also United States* v. *Diaz*, 377 Fed. Appx. 883, 897, 2010 WL 1767248 (11th Cir. 2010)(in affirming obstruction enhancement, finding that defendant's "malingering wasted government resources and needlessly delayed the prosecution of his case for over a year"); *United States* v. *Greer*, 158 F.3d 228, 236-241 (5th Cir. 1998)(feigning mental illness can trigger obstruction enhancement, and holding that even if a defendant suffers some form of mental illness, a finding of malingering and obstruction can still be made; "the mere fact that a defendant suffers from a personality disorder does not make him immune from" an obstruction enhancement).

The facts of this case show that Bejaoui deliberately feigned incompetency in order to delay his trial, and therefore application of Section 3C1.1 is appropriate. First, the Government's expert, Dr. Robert E. Cochrane, determined that Bejaoui was competent and had been malingering. (*See United States* v. *Bejaoui*, Decision, dated Oct. 12, 2012 (hereinafter "*Competency Decision*"). And while the Court did not explicitly find that Bejaoui was malingering in its competency decision, the Court credited the inconsistencies of Bejaoui's private conduct at the time, versus his public conduct, in its finding that Bejaoui was in fact competent. (*See Competency Decision* at

5

7-11).

Second, the defendant's seemingly rapid change in demeanor and conduct *after* the Court's finding on competency further supports the finding that he had been malingering to delay his trial and manipulate the judicial process. Soon after the Court's decision, on November 27, 2012, the Court held a conference on the defendant's application to proceed *pro se*. At that conference, unlike the defendant's near catatonic demeanor at the competency hearing and his demeanor during the evaluations with the experts, the defendant did not present as catatonic but in fact was engaged and lucid, such that the Court found Bejaoui to have voluntarily and knowingly chosen to represent himself.

Moreover, while proceeding *pro se*, the defendant filed numerous filings, all of which were extremely cogent and sound, further belying his competence and the fact that his prior conduct was no more than an attempt to obstruct the judicial process. (*See*, *e.g.,* Docket Entry Nos. 80, 81, 82, and 95). Indeed, the Court noted the defendant's history of manipulative behavior in the Court's ruling denying the defendant's final request to proceed *pro se* on the eve of trial. (*See United States* v. *Bejaoui*, Trial Tr. at 149:21-25 ("The timing and frequency of these multiple and varying requests for him to

6

either represent himself or change counsel are consistent with his history of attempting to manipulate these proceedings")). Moreover, in that same ruling, the Court noted Bejaoui's dramatic change after the competency ruling – which again, the Government submits is probative of his deliberate malingering: "Shortly after I made [the competency determination], Mr. Bejaoui's affect changed dramatically – I've put this on the record before – from being almost catatonic in court to once again being extremely actively involved in his defense . . . ." (*United States* v. *Bejaoui*, Trial Tr. at 152:16-19).

Accordingly, the Court should apply the obstruction enhancement in this case.

### B.    A Sentence Within the Guidelines Range of 57 to 71 Months Is Warranted

A sentence within the Guidelines range of 57 to 71 months' imprisonment is appropriate in light of the seriousness of the offense, and the need for the sentence to adequately deter criminal conduct.  *See* 18 U.S.C. § 3553(a).

### 1. The Seriousness Of The Offense Calls For A Guidelines Sentence

Bejaoui operated a long-running and significant insurance fraud scheme.  From about 2005 through 2006, Bejaoui fraudulently obtained insurance for over 100 livery cabs

7

operating in the New York City area.  He did so by making false representations that the vehicles being insured were operating in low-insurance rate areas, such as upstate New York and Long Island.  However, the livery cabs were not operating where Bejaoui attested they were, but rather were operating in the high-risk New York City metropolitan area.  Through this fraud, Bejaoui's conduct led to a loss of more than $400,000.

Further, Bejaoui used sophisticated means to perpetrate the fraud.  He hid behind shell companies and used mailboxes to hide the location of his operation.  Moreover, Bejaoui used the identities of his clients from his tax preparation business to facilitate and hide his fraudulent scheme. For example, Sadok Mejri, one such identify theft victim testified at trial that Bejaoui had prepared taxes for him but that he had no idea how his name appeared as the president of "Vestal," one of the entities Bejaoui used to perpetrate the fraud. (*See United States* v. *Bejaoui*, Trial Tr. at 334-335).

Given the extent of the fraud, the multiple victims, such as insurance victims and identity theft victims, a sentence within the Guidelines range of 57 to 71 months is appropriate.

### 2. The Need To Afford Adequate Deterrence Counsels For A Guidelines Sentence

The Government also submits that the need for general deterrence counsels in favor of a sentence within the Guidelines range of 57 to 71 months' imprisonment.  Such a sentence will deter others from engaging in similar conduct.  Further, the necessity for general deterrence in this case is highlighted by the difficulty in prosecuting such cases where the perpetrators, such as the defendant, use sophisticated means to hide their fraud.

### C. The Court Should Reject Defendant's Argument On Loss

The defense claims that the loss should only be $153,769. (Def. Mem. at 12).  The defense is wrong and this argument should be rejected.

First, it is appropriate under the Guidelines to calculate the loss based on the value of the property fraudulently obtained. U.S.S.G. § 2B1.1 Application Note 3(c) (providing that the Court need only make a reasonable estimate of the loss and that the loss may be based on the fair market value of the property taken).  Here, Bejaoui effectively obtained insurance for a high-risk area by falsely claiming that the insurance was for a low risk area.  In that circumstance, the loss is appropriately quantified as the difference between

9

what was paid for under false pretenses and what should have been paid had there been no false representations.

Second, nor does it matter, as the defense contends, that the livery cab drivers would not have been able to pay for the higher rated insurance policy any way.  (*See* Def. Mem. At 12 ("if unable to (fraudulently) obtain the less expensive policies, the drivers – incapable of affording the prohibitively expensive [insurance] would not have been able to obtain any insurance at all")).  First, this point is based on speculation.  Further, even if it were true, it merely informs the motive for the fraud, and is irrelevant to the issue of loss.

> **D.    The Court Should Not Consider The Fact That Bejaoui Should Receive Credit For His Prior State Custody In Fashioning Bejaoui's Sentence.**

The Government agrees with the defense that under Title 18, United States Code, 3585(b)(2), Bejaoui should receive credit for the time in state custody prior to his arrest in this federal case.  However, the Government disagrees with the suggestion that the Court should take that fact – and specifically the fact that the defense is unsure whether or not Bejaoui will get the credit – into consideration when fashioning Bejaoui's sentence.

Section 3585(b)(2) provides that a defendant shall be given credit for service of a term of official detention for a charge other than the instant offense *if* (i) the defendant was arrested on that other charge after the commission of the instant offense and (ii) the prior service of detention has not been credited to another sentence.  18 U.S.C. § 3585(b)(2).

On the facts of this case, Bejaoui's approximately 25 months in state custody for an unrelated harassment charge falls under this provision.  He was arrested on that harassment charge after the commission of this offense.  And because there was no sentence imposed on that prior arrest, that period of detention has not been credited to "another sentence."

However, the Court should not reduce Bejaoui's sentence in the first instance on this basis because it would lead to the result that he would be afforded double credit for the same factor.  The Government submits that the appropriate course is for the Court to impose a sentence within the Guidelines range of 57 to 71 months and allow the Bureau of Prisons to execute its statutory mandate to calculate the credit Bejaoui should receive.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court sentence Bejaoui to a sentence within the Guidelines range of 57 to 71 months' imprisonment, and submits that such sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Dated:      New York, New York
            August 30, 2013

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney
                              for the Southern District of New
                              York


                        By:  /s/ Kan M. Nawaday
                             Kan M. Nawaday
                             Assistant United States Attorney
                             Tel.:  (212) 637-2311


Cc:  Joshua L. Dratel, Esq. (By email: jdratel@joshuadratel.com)
     Lindsay A. Lewis, Esq. (By email: llewis@joshuadratel.com)
     Counsel for defendant Mondher Bejaoui