D9i6bejs

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          10 CR 553(SHS)

5    MONDHER BEJAOUI,

6                 Defendant.

7    ------------------------------x

8                                      New York, N.Y.
                                       September 18, 2013
9                                      4:30 p.m.

10
     Before:
11
                        HON. SIDNEY H. STEIN,
12
                                       District Judge
13

14                      APPEARANCES
     PREET BHARARA
15        United States Attorney for the
          Southern District of New York
16   KAN MIN NAWADAY
          Assistant United States Attorney
17
     JOSHUA L. DRATEL, ESQ.
18   LINDAY LEWIS, ESQ.
          Attorneys for Defendant
19

20

21

22

23

24

25

D9i6bejs

```
1              (In open court; case called)
2              THE DEPUTY CLERK:  Counsel please state your names for
3    the record.
4              MR. NAWADAY:  Good afternoon, your Honor.  Kan Nawaday
5    for the government.  Joining me at the table is Special Agent
6    Michael Birley.
7              THE COURT:  Good afternoon.
8              MR. DRATEL:  Good afternoon, your Honor.  Joshua
9    Dratel with Lindsay Lewis from my office for Mr. Bejaoui, who
10   is at the end of the table.
11             THE COURT:  We're here for the sentencing of
12   Mr. Bejaoui.  Let me tell you the information that I have.  I
13   have the presentence report of the Probation Department
14   prepared on June 18th of this year along with the addenda
15   versus second addendum.  The second addenda is approved on
16   August 28th of this year and the sentencing recommendation
17   approved on the same day.  In addition, I have two victim
18   impact statements sent to me in a letter dated June 24.  I have
19   the submission of Mr. Bejaoui himself dated August 20th.  I
20   have the government's sentencing memorandum dated August 30th
21   and I have a submission of Mr. Dratel dated August 23.
22             Is there any additional information I should have,
23   Mr. Dratel?
24             MR. DRATEL:  I don't think so, your Honor.  I think
25   that covers it.
```

D9i6bejs

1          THE COURT:  Mr. Nawaday?

2          MR. NAWADAY:  I don't believe so, your Honor, but I

3    would point out that there is a victim present here today, Ms.

4    Black who would like to say some words.  I don't know if she

5    has already submitted it to you.

6          THE COURT:  There is nothing that I have.

7          Ms. Black, have you submitted anything in writing to

8    the Court?

9          MS. BLACK:  Yes.

10          THE COURT:  Something you have here now?

11          MS. BLACK:  Yes.  I have it here.

12          THE COURT:  The government's representation is that

13    she is a victim.

14          MR. NAWADAY:  Yes, your Honor.

15          THE COURT:  Under the Victims' Rights Act you have the

16    ability to speak to the court.  If you have want to hand

17    something up, I will take a look at it.

18          Is this what you wanted to say to the Court,

19    Ms. Black?

20          MS. BLACK:  Yes.

21          THE COURT:  I am going to hand this back to you and I

22    will give you an opportunity to speak to me.

23          MS. BLACK:  Okay.

24          THE COURT:  So you can keep that.  It is a handwritten

25    statement is what it appears to be.  There will come a time in

D9i6bejs

1    the proceeding where you will be able to address the Court.

2              Mr. Dratel, have you read and discussed all of this

3    information with your client?

4              MR. DRATEL:  Yes, I have, your Honor.

5              THE COURT:  Do you have any objections to the findings

6    of fact in the presentence report that you wish to lodge?

7              MR. DRATEL:  Yes.  We set them forth in my letter on

8    the last page, page 21, paragraph 21 the loss amount.

9              THE COURT:  Just a moment.  Yes, I see that.

10             MR. DRATEL:  That would be it and the corresponding

11   charges in the offense level and the guidelines range.

12             THE COURT:  Yes.  Stemming from the difference in the

13   loss amount?

14             MR. DRATEL:  Yes.

15             THE COURT:  I understand.

16             Government, do you have any objections to the findings

17   of fact in the presentence report?

18             MR. NAWADAY:  Yes, your Honor.  As set forth in our

19   submission, we objected to the noninclusion of a two-level

20   offense level enhancement for obstruction of justice under

21   Section 3C1.1 of the guidelines.  Of course we do believe that

22   the loss amount is accurately reflected in the PSR.

23             THE COURT:  Where is that obstruction point in your

24   submission?

25             MR. NAWADAY:  That comes on pages 4 through 7.

D9i6bejs

1          THE COURT:  Thank you.  I will return all this

2    information to the Probation Department at the conclusion of

3    the proceeding.  I understand the arguments on loss amounts and

4    I understand the argument on the competency -- I mean

5    obstruction of justice according to government of the defendant

6    feigning incompetence.

7          Mr. Dratel, why don't you tell me what it is you wish

8    to tell me.

9          MR. DRATEL:  Thank you, your Honor.  I am not sure I

10   need to respond to what Ms. Black says, but just in case may I

11   have an opportunity?

12         THE COURT:  Yes, sir.

13         MR. DRATEL:  Obviously this is a case in which the

14   Court has significant knowledge so I am not going to belabor a

15   lot of what is in the papers unless the Court has specific

16   questions.

17         THE COURT:  I have a detailed knowledge of this case

18   and its various twists and turns over the past several years.

19         Go ahead.

20         MR. DRATEL:  Yes, your Honor.  I think trying to

21   concentrate on the functionality of the sentencing, in other

22   words, looking at whatever guideline level the Court applies --

23   whether it is the government's, whether it is ours, whether it

24   is Probation's -- to me it all leads to the same ultimate

25   result, which is a sense of time served.  Even though the

D9i6bejs

1    government's range is higher, the government acknowledges that

2    Mr. Bejaoui should by statute get credit for the two years in

3    state custody.  There are two reasons why that it is correct

4    and ought to be the case.  There are two reasons why I still

5    think a sentencing of time served is more appropriate and again

6    the functional equivalent.

7            THE COURT:  Functional equivalent?  The guideline

8    range here according to the Probation Department is 46 to 56

9    months.  If you include good time credit for his time

10   incarcerated, he is somewhat over 45 months.

11           MR. DRATEL:  Only if you give it at the top of the

12   range.  If you give him 46, it should be 39 months, your Honor.

13           THE COURT:  No.  I said with good time credit.

14           MR. DRATEL:  Right.  Oh, I am sorry.  I understand

15   what you are saying.  I understand.

16           THE COURT:  In other words, when you add in the

17   approximately 49 days a year, a sentence of time served is

18   essentially 46 months.  It may be a week or two shy of 46

19   months or it may be exactly 46 months.

20           MR. DRATEL:  Right, your Honor.

21           THE COURT:  I am reluctant to say the exact number of

22   days because I am not the Bureau of Prisons.

23           Does the government agree with that calculation, that

24   a sentence of time served is essentially a sentence of 46

25   months or maybe a week or two shy.

D9i6bejs

1    MR. NAWADAY:  That is accurate assuming the accurate

2    guidelines is 46 to 57.

3    THE COURT:  Yes.  Assuming that I adopt the guideline

4    calculation recommended by the Probation Department, correct?

5    MR. NAWADAY:  Yes.

6    THE COURT:  We're all agreed on that.

7    Go ahead, sir.

8    MR. DRATEL:  One of the reasons why in the terms of

9    even if the Court were to adopt the government's version of the

10   guidelines in terms of those numbers or even somewhere within

11   the range that Probation has prescribed, I still think time

12   served is the appropriate sentence for two reasons, one of

13   which is, and this is just from experience, while logic and the

14   statutes and the clear language should result in his being

15   credited with the time in state court, nobody in the Bureau of

16   Prisons is certain until they actually do it.  If we were still

17   operating with the Rule 35 that existed for I guess the first

18   seven years when I practiced, which is if there is a problem we

19   can come back within the Court 90 or 120 days and get something

20   corrected, we cannot do that now.  This is our chance to get it

21   right.  The second part to that is even if he does get the

22   credit, the chances are that he is going to spend some time

23   before Bureau of Prisons makes that calculation.  It could be

24   weeks and it could be a couple months before the Bureau of

25   Prisons gets around to doing the calculations applying the

D9i6bejs

1    credit and then saying, Oh, in other words if the Court gives

2    him a sentence of 57 months like the government wants to, by

3    the time the Bureau of Prisons gets around to crediting him the

4    two years, he will have already served more time than he

5    will -- he will be credited with more time.

6              THE COURT:  I understand.

7              MR. DRATEL:  You understand.  So those are the reasons

8    why I think time served as a functional matter really works.

9    Also, if you think where this case is going ultimately in terms

10   of immigration, INS and getting all of that taken care of, I

11   don't see an advantage to anyone, whether it is the system,

12   whether it is the government whether it is even victims in this

13   regard of further imprisonment of Mr. Bejaoui.  Under the

14   circumstances and the conditions he is in now that doesn't

15   assist them in terms of any probable restitution issues or

16   anything else.  At this point I just don't see any productivity

17   there.

18             THE COURT:  I understand the point.

19             Next.

20             MR. DRATEL:  With respect to the obstruction part, the

21   cases which are from the Fifth and Eleventh Circuit creates to

22   me a dangerous proposition for counsel, which is that am I to

23   discount or handicap a question of competency that I bring to

24   the Court's attention with the possibility that I am going to

25   take an incompetent defendant further in the case because down

D9i6bejs

1   the road if he is found to be competent, I am going to wind up

2   with two extra points.

3          THE COURT:  That is not the test.  The test is whether

4   he deliberately feigned incompetence.  The question isn't

5   whether he was competent or not.  Those two points depend on

6   intentionally feigning incompetence.  That is a different

7   issue.

8          MR. DRATEL:  I understand, your Honor.  Part of it is

9   in terms of we brought it to the Court's attention.  He didn't

10  say I want a competency hearing.

11         THE COURT:  Presumably an incompetent person would not

12  do that.

13         MR. DRATEL:  Yes.  By the time I brought it to the

14  Court's attention it was in a different context than where it

15  ultimately got to in the sense that he wasn't in a wheelchair.

16  He has never gotten back to the point where he was when I met

17  him in December of 2010.  Not that that was a day at the beach

18  to begin with, but at the same time in some ways he is actually

19  easier to interact with because he is not as agitated as he was

20  in the very beginning.  He certainly fully has never recovered.

21         We put in our papers Dr. First's conclusions, even his

22  ultimate decisions, the Court's colloquy with Dr. First about

23  this.  The competency issue is a very narrow and precise

24  technical legal question and I think when you merge that with

25  questions of intent underlying someone's emotional state that

D9i6bejs

 1    again also sets -- I just don't agree with the premise that --

 2    the Court could do that.  It certainly is not automatic.  I

 3    think in this case given a variety of the factors, one of which

 4    is that also that -- I know the secondary gain is somewhat

 5    layered here, but there really wasn't a lot of secondary gain.

 6    He could have taken a plea agreement two years ago and been out

 7    of here for two years.  There wasn't a lot of things that he

 8    did that didn't obstruct.  They only obstructed his ability to

 9    put this case behind him and his ability to mitigate his losses

10    to a certain extent from this case.  If you look at the

11    obstruction in this case, it is not deliberate and calculated

12    in a way an obstruction has to be in order for the two points

13    to be imposed.  Again, even if you do impose the two points, it

14    still puts us in the same arithmetic territory that I started

15    out with.

16         THE COURT:  I understand the point.

17         MR. DRATEL:  I know there had been a lot of behavior

18    in this case obviously and I think regardless of how it looks

19    in the larger picture, I think with respect to the behavior

20    itself, it does stem from a fundamentally non-volitional

21    emotional problem, personality problem, pain problem that

22    Mr. Bejaoui continues to suffer from that really requires

23    treatment and not punishment.  So in that sense I would ask the

24    Court to consider that as well.

25         On the loss amount I think the argument is clear and I

D9i6bejs

1    don't think I need to repeat it.  I think the Court is fully

2    equipped to make that determination.  I don't know that there

3    is anything else that I would cover that hasn't already been

4    covered in sufficient detail in the papers.

5            THE COURT:  What is the position of the defense on the

6    imposition of supervised release?  Does the defense have a

7    position?  Assuming as I think is the case, although it is a

8    little difficult to determine that that is not a case in which

9    supervised release is mandatory, then it may fall under

10   5D1.1(C), supervised release not required by statute and the

11   defendant is deportable.

12           Go head.

13           MR. DRATEL:  Right.  That was the first thing I was

14   going to raise, your Honor, is the immigration status may make

15   all of that academic to some extent.  The second part is like a

16   lot of issues in this case, there is some ambivalence on my

17   part in this sense, and I will lay them out --

18           THE COURT:  I understand the ambivalence.  That is why

19   I was asking where you ultimately came out if you wanted to

20   give a position.

21           MR. DRATEL:  Well, my ultimate position is that I

22   think that given where we have been in this case from the

23   outset of this particular part of it, coming from the beginning

24   of 2011, I think that supervised release is certainly an

25   appropriate substitute for any further custodial sentence.  I

D9i6bejs

1    also think that it in some ways it may improve Mr. Bejaoui's

2    chances of getting the kind of social service attention that he

3    left out there on his own, and his wife is not there with him

4    anymore, I am not sure what his resource or capacity are?

5              THE COURT:  That is why I am asking the question.

6              MR. DRATEL:  I think supervised release is within the

7    full contemplation of issues here.  I think it is appropriate

8    given the circumstances of the offender.  I am trying to act in

9    his best behalf.  I am looking at it in a much more holistic

10   way.

11             THE COURT:  Anything else you wish to say?

12             MR. DRATEL:  No, your Honor.

13             THE COURT:  Mr. Bejaoui, is there anything you wish to

14   say?  You have the right under the Federal Rules of Criminal

15   Procedure to address the Court at sentencing.  Now is your

16   opportunity if you wish to say anything.  You don't have to,

17   but you certainly have the right to do so.

18             THE DEFENDANT:  Good afternoon, your Honor.

19             THE COURT:  Good afternoon, sir.

20             MR. DRATEL:  May I bring a microphone over to him,

21   your Honor?

22             THE COURT:  Yes.

23             THE DEFENDANT:  Your Honor, you mentioned that you

24   received a -- it was not a letter.  It was sort of an objection

25   to the presentence report that I would like the Court to

D9i6bejs

1    acknowledge.

2            THE COURT:  I have received a lengthy submission from

3    you dated August 20th and I have read it.  Yes, sir.

4            THE DEFENDANT:  It is an objection.

5            THE COURT:  Yes.  You stated various objections.

6            THE DEFENDANT:  I also send a copy.  I don't know if

7    it in the proper way to send copy to the Probation Office, but

8    I did not receive any response from them.

9            THE COURT:  You indicate here in your certificate of

10   service that you served the Probation Department as well as the

11   U.S. Attorney?

12           THE DEFENDANT:  Right.  And that the objections was in

13   a timely manner since they give me two weeks.

14           THE COURT:  I have reviewed it.  I have accepted these

15   objections.  Go ahead.

16           THE DEFENDANT:  Since the Court did acknowledge I

17   wanted to make my objections and the amount of loss knowing

18   that I know the amount of loss is not inaccurate.  I don't know

19   if it was done for forensics or stereotype numbers that was put

20   in there by the district executives office, which is the

21   attorney.  So that was it.

22           THE COURT:  Thank you.

23           THE DEFENDANT:  Otherwise to make sure that the Court

24   know that I did have some objection in regard to the amount of

25   loss.  The two or six enhancement points that includes the two

D9i6bejs

1    points of special indications and I made clear a point that I

2    did not have the a U.S. education.  I did not obtain any U.S.

3    license.  All my education was in foreign countries and I did

4    not sought any special license to operate my business.

5              THE COURT:  Thank you.

6              THE DEFENDANT:  That in terms of presentence report

7    but I want the Court to know that during the sentencing phase,

8    as Mr. Dratel has stated, it has been over three years since

9    this case has been litigated.  I appear before your Honor

10   several times.

11             THE COURT:  Many times.

12             THE DEFENDANT:  Many times.  In some cases I might

13   have appeared agitated or aggravated.  I am not going to

14   apologize for my behaviors because I think it is related to my

15   manic depressive.  I am not going to apologize for being

16   perplexed other days, but I would like to apologize to the

17   Court for putting myself in the position where I would subject

18   myself to criminal prosecution.  I did not know my actions 12

19   years that I conducted my business when I was an employee or

20   when I become my own business owner that my actions would

21   elevate to a fraud, intent of fraud.

22             As I stated during my plea, your Honor, that I did not

23   have any interest from of personal gain from the insurance

24   company.  I was not a driver.  I was approached by drivers and

25   car service owners to submit applications for them.  That is in

D9i6bejs

1    regard to the fact of the case.  As Mr. Dratel stated I spent

2    two years in the state detention, your Honor, before I came to

3    this district and I was held to two years for crimes that I

4    never commit.  I want the Court to consider -- I want the Court

5    to consider some of the facts that were relevant to the case

6    and like what was described that I stole from my clients and

7    matters that were not correct.  Thank you.

8              THE COURT:  Thank you, sir.

9              Government, is there anything the government would

10   like to say?

11             MR. NAWADAY:  First, your Honor, your Honor does have

12   a very intimate grasp of what has occurred at these

13   proceedings.  On the obstruction point we do believe what

14   occurred does constitute a deliberate feigning of the

15   competence, which would lead to a two-level enhancement for

16   obstruction.

17             Second, just to focus your Honor on the seriousness of

18   the offense, the victims weren't just insurance companies.  In

19   our view the victims included Mr. Bejaoui's tax clients whose

20   identities he used to cover his tracks in the fraud, in

21   perpetuating the fraud.

22             Third, our view is the victims also included certain

23   of the drivers who went to him believing that they were getting

24   valid insurance.  Frankly, I am a little shocked that

25   Mr. Bejaoui says that it is actually the driver's fault, that

D9i6bejs

1    they are the ones who made him commit this fraud.  That is

2    absolutely not correct.  Drivers went to him seeking insurance

3    and he got insurance through fraud.  They believed they had

4    valid insurance.  I believe that from what I expect your Honor

5    will hear from Ms. Black that led to losses for these drivers.

6           So I understand that regardless of which guidelines

7    range your Honor finds appropriate in this case it is true that

8    in light of the time that Mr. Bejaoui has been incarcerated a

9    sentence of time served would place him within a guideline

10   sentence and we are seeking --

11          THE COURT:  Not within the guideline range that the

12   government wants because you add the enhancement points for

13   obstruction.

14          MR. NAWADAY:  It actually would still because he gets

15   credit for the two years he was in state custody.

16          THE COURT:  I see.  Is everyone agreed on that?

17          MR. DRATEL:  Yes, your Honor.

18          THE COURT:  If you do that, it is within guideline

19   range, correct, either way?

20          MR. NAWADAY:  Except if your Honor gave the high end.

21          THE COURT:  I understand.

22          MR. NAWADAY:  Thank you, your Honor.

23          THE COURT:  Ms. Black, you wish to address the Court.

24   Please come forward.  You may stand at the microphone and speak

25   clearly.  Tell me who you are and the capacity in which you

D9i6bejs

1    wish to address the Court and welcome.  Yes, ma'am.  You can

2    move the mic near your face.

3         MS. BLACK:  Your Honor, thank you for giving me the

4    opportunity to address the Court.  My name is Avis Black and I

5    ran a taxi limousine service at 98 Smith Street, Brooklyn, New

6    York from April 2004 to August 2011.  Early in the operation of

7    this business, I was solicited by Mondher Bejaoui to place my

8    insurance coverage with his brokerage company.  He was situated

9    across the street from my business and I thought that doing

10   business with him might help with the many time constraints a

11   small business encounters.

12        I insured three cars with Mr. Bejaoui's company.  When

13   one of the cars had an accident and was totaled I learned that

14   there was no insurance coverage on the cars.  It was

15   devastating to me.  As everyone knows it is a daunting

16   challenge to run a small business nonetheless having two cars,

17   one being totaled and one totaled taking out of a business,

18   that of course lowered my financial situation and caused me a

19   whole lot of problems.  I feel that all this occurred because

20   Mr. Bejaoui deliberately set out to defraud me and any other

21   that did business with him.  The most devastating toll on me

22   was a financial hit.  On a very conservative front I lost over

23   250,000 over a period of time.  Because of my present financial

24   situation, I am asking the Court to consider some financial

25   restitution.  Avis Black.  Thank you very much.

D9i6bejs

1          THE COURT:  Thank you.  How did you come up with the

2     conservative estimate of $250,000?

3          MS. BLACK:  Okay.  I used -- well, I included the

4     insurance premiums for -- it was very conservative.  I didn't

5     use the full period that I lost the cars from the time I

6     closed.  I didn't use that.  I used just the year -- two and a

7     half years.  That is all I used.  I used the economic loss,

8     economic loss.  In other words two cars were not operating the

9     business for all this period of time and I calculated back.

10          THE COURT:  In other words, your figured your loss of

11     business due to the fact that two of your cars could not

12     operate?

13          MS. BLACK:  Exactly.

14          THE COURT:  Why is it that two of your cars were

15     unable to operate?

16          MS. BLACK:  Because one was totaled in an accident and

17     I had no insurance.  The other one was towed because there were

18     tickets accumulated on this car that I did not know about and

19     the City of New York towed the car.

20          THE COURT:  Did that car have insurance?

21          MS. BLACK:  Yes.  It was supposed to have insurance.

22          THE COURT:  Did it in fact have insurance?

23          MS. BLACK:  Yes.

24          THE COURT:  I appreciate coming in and speaking to the

25     Court.

D9i6bejs

```
 1                 Is the government seeking restitution?
 2                 MR. NAWADAY:  Yes, your Honor.  There is restitution
 3    for the insurance companies.  We still have to determine.
 4                 THE COURT:  You will have 90 days in which to submit
 5    restitution figures.
 6                 MR. NAWADAY:  Thank you, your Honor.
 7                 THE COURT:  I hereby adopt the findings of fact in the
 8    presentence report.  I also am adopting the guideline
 9    calculation as set forth by the Probation Department.  I am
10    accepting the loss figures as set forth by the Probation
11    Department.  I am overruling the defense objection that the
12    loss is overstated.  It is clearly the intended loss that
13    matters.  The fact that some drivers theoretically may not have
14    purchased the proper insurance because theoretically they may
15    not have been able to afford it is not a proper basis for
16    calculating loss.  So I am using the loss figures of the
17    Probation Department.  I should say that my sentence would be
18    the same regardless of the loss calculation that I adopted,
19    that is, whether I adopted the defense calculation or the
20    Probation Department calculation.
21                 I am not granting the enhancement for obstruction of
22    justice.  The obstruction of justice in the context of this
23    case is available only if there has been deliberate feigning of
24    incompetence.  The issue of incompetence was hotly contested
25    here.  There were psychiatrists' reports on both sides.  The
```

D9i6bejs

1   Court rendered its decision, which it believed at that time and

2   is more convinced over time that the Court was correct does not

3   indicate that the defendant was deliberately feigning

4   incompetence.  He is competent.  That is what the Court found.

5   That is not the same as a determination that he was

6   deliberately feigning incompetence.

7           Each of the witnesses at the competency hearing agreed

8   that there are emotional and mental issues here outside of the

9   issue of incompetence.  I am not granting the enhancement for

10  obstruction of justice and I am denying all the other

11  objections that have been lodged both by Mr. Dratel, by the

12  defendant pro se and if there are any by the government as

13  well.

14          My intended sentence is to sentence this defendant to

15  time served.  That is a guideline sentence.  Both sides agreed

16  to that fact.  I am going to impose one year of supervised

17  release.  It is the assumption of the Court that the defendant

18  will be within the custody of the Department of Homeland

19  Security.  If that is true, and I am rendering no opinion on

20  that, he does not have to serve his time of supervised release

21  in the United States.  I am also going to impose a standard

22  mandatory and special condition set forth by the Probation

23  Department.

24          Before I formally impose sentence, Mr. Dratel, did you

25  wish to lodge any formal objection?

D9i6bejs

1          MR. DRATEL:  No, your Honor.

2          THE COURT:  Government?

3          MR. NAWADAY:  No, your Honor.

4          THE COURT:  I hereby find that the total offense

5    finance level is 23, criminal history category is one, the

6    guideline range under the guidelines as determined by the

7    Probation Department and as adopted by this Court is 46 to 57

8    months.  Pursuant to the Sentencing Reform Act of 1984 it is

9    the judgment of this Court that the defendant Mondher Bejaoui

10   is committed to the custody the Bureau of Prisons for time

11   served.  He is sentenced to time served.  That is a guideline

12   sentence because it is within the 46- to 57-month range.

13          Mr. Bejaoui shall be placed on supervised release for

14   a term of one year within the conditions recommended by the

15   Probation Department, namely, the following mandatory

16   conditions:  He shall not commit another federal, state or

17   local crime.  He shall not illegally possess a controlled

18   substance.  He shall not possess a firearm or dangerous weapon

19   or destructive device.  He shall refrain from any unlawful use

20   of controlled substance.  He shall submit to one drug test

21   within 15 days of his placement on supervised release and at

22   least two unscheduled drug tests thereafter as directed by his

23   Probation officer.  He shall cooperate in the collection of DNA

24   as directed by his Probation officer.

25          He also shall comply with standard conditions 1

D9i6bejs

through 13 plus the following special conditions:  He shall
comply with immigration laws and any directives of the
immigration authorities if there is a detainer on him by the
Department of Homeland Security.  Two, he shall participate in
a mental health program approved by the Probation Office.  He
shall continue to take all prescribed medications unless
otherwise instructed by his health care provider.  He shall
contribute to the cost of services rendered if he has the
ability to pay in the form of copayment.  I authorize the
release of available psychological and psychiatric evaluations
to the health care provider.  Three, he shall submit his
person, residence, place of business, vehicle or any other
premises under his control to search on the basis that he has a
reasonable belief that contraband or evidence of a violation of
any condition of release may be found.  That is, if the
Probation officer has a reasonable belief to that effect, the
search must be conducted at a reasonable time and in a
reasonable manner and failure to search -- submit to search may
be grounds for revocation.  Mr. Bejaoui shall inform all other
residence that the premises may be subject to such pursuant to
this condition.  Mr. Bejaoui shall report to the nearest
Probation Office within 72 hours of his release from custody.
Indeed, if there is no detainer on him when he is released, he
should report within 72 hours to the Probation Office in the
Southern District of New York.

D9i6bejs

1          The sentence of time served is on each count, all

2     counts, to run concurrently.  The sentence of one-year

3     supervised release is concurrent on all counts as well.  I am

4     not imposing a fine because I find Mr. Bejaoui lacks the

5     ability to pay a fine after taking into account the presentence

6     report and the defendant's lack of assets and his limited

7     earning ability as well as his family responsibilities.

8          I am going to adjourn the imposition of restitution

9     for 90 days.  Within 75 days of the judgment and commit papers

10    being signed, and I intend to sign them within the next day or

11    two at most, the government should submit to me a proposal on

12    restitution and it can take into account if it deems

13    appropriate Mr. Black's comments.  Again, they should submit

14    their proposal to me within 75 days and I will act on it within

15    90 days of the judgment and commitment papers being and

16    entered.

17         I hereby order Mr. Bejaoui to pay to the United States

18    a special assessment of $500, that is $100 on each of Counts

19    One, Two, Three and Five and Six.

20         As I have said even if I am incorrect on the loss

21    amount and even if I am incorrect on the obstruction of justice

22    enhancement, my sentence still be the same.  I have sentenced

23    the defendant within the guideline range.  I have factored all

24    many of the factors 18, United States Code, Section 3553(a).  I

25    believe the sentence is appropriate.  I believe it is

D9i6bejs

1    reasonable and fair.  I believe it is sufficient but not

2    greater than necessary to meet all the ends of the criminal

3    justice system, including the seriousness of the offense and

4    the need for punishment and deterrence.

5             Mr. Dratel, are you aware of any legal reason why the

6    sentence should not be imposed as I have stated it?

7             MR. DRATEL:  No, your Honor.

8             THE COURT:  Mr. Nawaday?

9             MR. NAWADAY:  No, your Honor.

10            THE COURT:  I hereby order the sentence to be imposed

11   as I have stated it.

12            Mr. Bejaoui, you have the right to appeal the sentence

13   I have just imposed on you, sir.  If you are unable to pay the

14   cost of an appeal, you do have the right to apply for leave to

15   appeal in forma pauperis.  If you make a request, the clerk of

16   the Southern District, the clerk of the Southern District will

17   prepare and file a notice of appeal on your behalf immediately

18   and obviously you are able to file a notice of appeal yourself

19   if you so desired to appeal.

20            Do you understand your appeal rights, sir?

21            THE DEFENDANT:  Yes.

22            THE COURT:  The government, I take it there are no

23   open counts?

24            MR. NAWADAY:  That's correct.

25            THE COURT:  Is the government aware of whether or not

D9i6bejs

1    there is a detainer that has been lodged?  The presentence

2    report says no.

3              MR. NAWADAY:  I am not aware of one being lodged.

4              THE COURT:  Mr. Bejaoui, I sentenced you to time

5    served.  In other words, if there is no detainer from the

6    Department of Homeland Security on you, you will be processed

7    by the marshals and you will be released.  If that happens you

8    should report to the Probation Department, the Southern

9    District of Probation Department, within 72 hours of my signing

10   the judgment and commitment papers here.  I urge you, sir, to

11   lead a law-abiding life.  You have been through a very long and

12   extensive process here that involved a great deal of time by

13   yourself, your lawyers and the number of documents.  That

14   process is at an end.  I have sentenced you appropriately

15   within the guideline range and from a standpoint of this Court,

16   you are free now to go about your business and you must comply

17   with all of the conditions of supervised release.  The

18   Probation Department will set those forth for you.  You can't

19   have a firearm, you can't take drugs, you cannot affiliate with

20   federal felons, and there are a whole series of conditions that

21   you have to comply with, and you cannot commit any other crime.

22   If there is a detainer on you from the Department of Homeland

23   Security that is a separate proceeding and you will have to

24   deal with that and that is an issue of your residence in the

25   United States.

D9i6bejs

1          All I can say, sir, is I wish you good luck.  Please

2     remain law-abiding.  I hope I don't see you again.  By that I

3     mean I hope you don't run afoul of the criminal justice system

4     again.  Good luck to you, sir.

5          Mr. Dratel and Ms. Lewis, you have the appreciation of

6     the Court.  It has been a very long and difficult

7     representation and the Court does appreciate your services as

8     well as the service of all Criminal Justice Act attorneys.

9     This was a difficult case to litigate from the standpoint of

10    the government and defense and it has now reached an

11    appropriate conclusion.  The Court thanks everybody for their

12    participation.

13          MR. DRATEL:  Thank you, your Honor.

14          MR. NAWADAY:  Thank you, your Honor.

15          THE DEPUTY CLERK:  All rise.

16                              oOo

17

18

19

20

21

22

23

24

25